6669

STATE v. COOK.

1. LEGAL HOLIDAY.—OBJECTION to trial of a criminal case on a legal holiday must be made in the cause when called for trial, and cannot be based on statement of Judge, made on day before, that he knew of no law which prevented the Court ,from trying cases on that day in response to general interrogation by defendant's counsel as to Court being held on that day.

2. HOMICIDE.—If a brother or other near relative undertake to assist his relative, in danger of death or serious bodily harm, from one ir combat with him, he does so at his peril, and if he slay the com batant in so protecting his relative, he can only set up such defenses as his protected relative could have set up had he slain the combatant.

3. REHEARING refused.

Before WATTS, J., Hampton, July, 1906. Affirmed.

Indictment against Vincent Cook, Bose Cook and Daisy Cook for murder of Hampton Smith. From sentence defendants appeal.

*Mr. W. S. Tillinghast,* for appellant, cites: *Court should not be held on legal holiday:* Code 1902, sec. 3094. *As to the right of one to kill in defense of another:* 8 Tex. App., 187; 29 Tex. App., 236; 25 Am. St. R., 723; 15 S. W., 722; 67 L. R. A., 547, note 6; 52 Mich., 616; 95 Mo., 322.

*Solicitor James E. Davis,* contra.

The opinion in this case was filed May 27, 1906, but remittitur held up upon petition for rehearing until

September 28, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendants, Vincent Cook, Bose Cook, Daisy Cook and Henry Cook, were tried at February, 1906, Term of the Court of General Sessions for Hampton County, under an indictment charging them

with the murder of Hampton Smith. Vincent Cook, Bose Cook and Daisy Cook were convicted of manslaughter, and Vincent Cook and Bose Cook were convicted also under the second count of the indictment, charging them with carrying concealed weapons. The following statement appears in the record:

"On the trial of the cause the State offered testimony tending to show that at the time of the alleged homicide there was a carnival in the town of Hampton, and that deceased was one of a number of special policemen, duly appointed by the town council to preserve order, and that while attempting to arrest Daisy Cook for an alleged breach of the ordinances of the said town of Hampton, he was set upon by the brothers of the said Daisy Cook and shot to death with pistols. The defendants offered testimony tending to prove that the defendants Bose Cook and Vincent Cook came up suddenly and, finding their brother assaulted, interfered in his defense, and, under an impending necessity to save their brother from death or serious bodily harm, they took the life of the deceased. They further offered testimony tending to prove that they were all without fault in bringing on the difficulty. The State replied to the defense and offered testimony tending to show that Daisy Cook was cutting up the tents belonging to the parties who owned the show or carnival, and, furthermore, that his codefendants had, on the afternoon previous to the killing in the evening, made threats against the life of the deceased. The issue was submitted to the jury on the charge of the Court."

The first exception charges the Circuit Judge committed error in ordering the defendant to go to trial on the 22d day of February, a legal holiday. The facts bearing on this point are thus stated in the record: "On the 21st day of the said month, Mr. Tillinghast, one of the attorneys for the defendants, inquired of the Judge whether he would hold Court on the 22d of February, as he thought he could not do so, that being a holiday. The

Judge ruled that he knew of no law to prevent the Court
being held on the succeeding day. The case was then called
on the 22d of February, and no further objection being
raised, the case proceeded to trial with the result above
stated." The point is purely technical and defendants
suffered no detriment. It will be observed that Mr. Tilling-
hast does not appear to have had reference to this or any
other case, and the response of the Circuit Judge cannot be
regarded as an adjudication made in this cause. To make
the objection available on this appeal, it should have been
distinctly made against proceeding with this cause when it
was called for trial. Not having been made, it must be con-
sidered objection to the trial on the 22d day of February
was waived. *Mitchell* v. *Bates,* 57 S. C., 52, 35 S. E., 420;
21 Cyc., 444.

The second ground of appeal is as follows: "That his
Honor, the presiding Judge, erred in charging the jury, in
reference to the right to kill in defense of another, as follows:

'But if your brother or one near and dear to you pro-
vokes a difficulty, or puts himself in the wrong and
bring it on, the law does not allow you to go there,
take his place and kill that man and say you are guilty neither
of murder nor manslaughter. * * * The law does not give the
person who is near and dear to you the right to provoke a
difficulty and then let you come in and kill some one, when
he has brought it on himself, and get out of it by your saying
he was near and dear to you, and you did the killing on that
account. But if he was without fault in bringing on the
difficulty and the law would justify him in defending himself,
you have a right to go in and defend him. But if he brings
on the difficulty and you take part, you do it at your own
risk, and if he took life under similar circumstances, and
would have been guilty of murder or manslaughter, and you
go in, take his place and take life under those circumstances,
then you are guilty of murder or manslaughter.' The error
being that the said charge held one striking in defense of a
brother bound and affected by a fault on the part of the

brother defended, in bringing on the difficulty, although he may have acted without knowledge of such fault or may have had no opportunity to ascertain who was at fault in bringing on the difficulty, before being compelled by the pressing necessity to act in defense of his brother; and he may be without fault himself; whereas, it is respectfully submitted, that in order for one to be affected by the fault of another he must at least have some knowledge or opportunity to know it."

This exception raises the important question whether one who undertakes to assist a near relative who is in danger of death or great bodily harm at the hands of an antagonist acts at his peril if the person assisted was actually in fault in provoking the difficulty. There is some authority for the view that the assistant is guilty who takes life in aiding a relative in apparent danger of death or great bodily harm if he knew his relative to be the aggressor or as a reasonable man should have known it, but not otherwise. *Chambers* v. *State* (Tex.), 79 S. W., 572; *State* v. *Harper* (Mo.), 51 S. W., 89; *Little* v. *State* (Miss.), 40 So., 105. There are a number of other cases decided by the Supreme Court of Texas to the same effect, but in that State, as in Missouri, the law as to homicide has been greatly modified by statute.

Even if it be assumed, however, the criminal codes of those States have not affected the consideration to be given these decisions by courts of other States, they are opposed to the great weight of authority from the earliest times to the present.

In Hale's Pleas of the Crown, vol. 1, p. 484, the rule is thus stated: "The like law had been for a master killing in the necessary defense of his servant, the husband in defense of the wife, the wife of the husband, the child of the parent, or the parent of the child, for the act of the assistant shall have the same construction in such cases, as the act of the party assisted should have had, if it had been done by himself, for they are in mutual relationship the one to the other." See, also, 1 Bishop on Criminal Law, sec. 877, and

21 Cyc., 826, *et seq.* The doctrine is thus comprehensively stated in Wharton on Homicide (3d edition), sec. 332 : "The doctrine of freedom from fault in bringing on a difficulty as a condition precedent to a plea of self-defense applies with equal force to a case in which one person interferes in a difficulty between two others in behalf of, or to protect one of them ; and generally speaking a person who does this will not be allowed the benefit of the plea of self-defense, unless such plea would have been available to the person whose part he took in case he himself had done the killing, since the person interfering is affected by the principle that the party bringing on the difficulty cannot take advantage of his own wrong. If the person sought to be protected, provoked or brought on the difficulty, he must have clearly manifested a desire and intention to retire from the conflict ; and even then the person interfering would not be justifiable if he struck the fatal blow in pursuance of a previous design to assist his friend in the event of a personal difficulty. And where one person interferes in behalf of another who was the aggressor, and there is opportunity to retreat after the interference, and advantage is not taken of it, the person interfering can claim no greater right than the other, and neither of them can invoke the doctrine of self-defense. Thus, if a son fight in defense of his father, his act in doing so will receive the same construction as that of the father, and if the latter was the aggressor in bringing on the difficulty, and could not plead self-defense, the same rule applies to the son. And the son cannot rely on his own freedom from fault in bringing on the difficulty, as a defense, where he knew the father had provoked the attack ; both must have been without fault in bringing it on. Nor is a father justified in killing the adversary of his son, where the son had provoked and brought on the conflict in which he was placed in imminent danger. And the plea of self-defense cannot be interposed by a father who kills an officer rightfully seeking to arrest his son, to prevent such arrest. Nor can one strike to relieve a brother from peril unless the brother was free from

fault in bringing on the difficulty which placed him in peril. And if a person in whose defense a brother engaged was in fault, and had not retreated or attempted to retreat, the interference is not justifiable or excusable." [ The following cases support the same view: *Wood* v. *State* (Ala.), 86 Am. St., 71, and note; *Utterback* v. *Commonwealth* (Ky.), 88 Am. St., 329, and note; *People* v. *Travis,* 56 Cal., 251; *Louisiana* v. *Giroux,* 26 La., 582; *Sharp* v. *State,* 19 Ohio, 389; *State* v. *Brittain,* 75 N. C., 174; 74 Am. St., 736, note.]

There are some expressions in Wharton on Homicide and other text-books which seem to be at variance with the text above quoted, but they will be found to be merely a statement of the rule as laid down in the Texas and Missouri cases to which we have referred.

[ The precise question has never been decided in this State, so far as we can discover, but the same principle was involved in *State* v. *Anderson,* 1 Hill, 340. There the right to arrest a felon was under discussion, and the Court held, in order for the party who killed in the effort to arrest one charged with the felony of murder to excuse himself, he must show that a voluntary homicide, presumed by the law to be felonious, had been committed and the party charged had perpetrated it. The Court uses this language: "The homicide actually committed constitutes the authority to arrest; it is a felony until matter in excuse is shown; it authorizes the grand jury to find a true bill, and thus put the prisoner on his trial for life and death. Like the finding of stolen goods in the possession of one, he is legally regarded as the thief until he accounts for his possession: so he who of his own will, and not by command of law, commits a homicide, is legally guilty of murder until he shows that it was excusable in self-defense, or manslaughter by reason of sudden heat and passion from reasonable provocation given. The party arresting is supposed to act with knowledge of the law; he is bound, therefore, to show that the prisoner has committed the fact from which the law raises the presumption of guilt. This is what I understand by being bound to show the pris-

oner's guilt in order to justify his arrest by a private person. A mere suspicion that he has done the act will not justify the arrest; the proof must show that *prima facie* a legal felony was committed, and that the prisoner was the perpetrator. The prisoner's excuse, although it might shield him from condemnation, does not enter into the question." It was here distinctly held that reasonable and honest belief that a felony had been committed would be no justification.

In commenting on the case of *State* v. *Anderson, supra,* this Court said in *State* v. *Griffin,* 74 S. C., 414: ",It will thus be seen that it was incumbent on the person making the arrest to show the actual fact from which the law raised the presumption that a felony had been committed. He was not permitted to act merely upon information, although it might strongly tend to establish the fact from which the law inferred a, felony." The law on the subject of arrest has been changed in this respect by sec. 1 of the Criminal Code, as will be seen by reference to the case last cited, but the statute has no application to one who kills in assisting another.

The case of *State* v. *Myers,* 13 S. C., MSS., which is supposed to support the appellant's view, seems to be not at all clear and we discern in it no adjudication of the point here under discussion.

We have endeavored to show the law as laid down by the Circuit Judge is firmly established. It is true, the rule may in exceptional cases work hardship; but the opposite rule would allow the innocent man who had been forced to strike in self-defense to be killed with impunity merely because appearances happened to be against him at the moment a partisan of his antagonist reached the scene of conflict. The duty seems urgent to enforce rather than relax the rule which admits of no excuse for taking human life except necessity.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE GARY, *dissenting*: The facts are fully stated in the opinion of Mr. Justice Woods.

I concur in so much of said opinion as overrules the first exception, but dissent upon the question presented by the other exception.

It seems to me that Mr. Justice Woods has not given full force to that principle of the law which not only justifies a third · party in taking human life to prevent a felony from being committed but likewise imposes upon him the duty of acting under such circumstances.

The right of a third party to take life in order to prevent a felony is thus stated in sec. 532 of Wharton on Homicide: "Where a known felony is attempted upon the person, be it to rob or murder, the party assaulted may repel force by force, and even his servant attendant on him, or any other person present, may interpose for preventing mischief; and if death ensues, the party so interposing will be justified. If A, B and C are in company together and walking in a field, and C assaults B, who flies; and C pursues him, and is in danger to kill him, unless there be help; and A thereupon kills C, in defense of the life of B, it seems that in this case there is such an inevitable danger of the life of B, that the killing of C by A is in the nature of *se defendo*. But then it must appear plainly by the circumstances of the case—as the manner of the assault, the weapon with which C made the assault— that the imminent danger of the life of B is *bona fide* apparent to A."

In sec. 533 it is said: "*Bona fide* belief by the defendant, that a felony is in process of commission, which can only be averted by the death of the supposed felon, makes the killing excusable homicide, though if such belief be negligently adopted by the defendant, then the killing is manslaughter. * * * If A honestly and without negligence on his part believes that B is in the process of committing a felony which can only be arrested by B's

death, A is excused in killing B." See, also, sections 537 and 539.

"It is the duty of every man, whether an officer of justice or private citizen, who sees a felony attempted by violence, to prevent it if possible, and in the performance of his duty, such person has the legal right to use all means which appear to him as a reasonable man to be necessary to make the resistance and interference effectual, and if the felony cannot be prevented by other means, he is justified in taking life." 21 Enc. of Law., 207.

"A homicide is justifiable when committed by necessity and in good faith in order to prevent a felony attempted by force or surprise, such as murder. * * * To justify the killing, however, it must be done in good faith and under an honest and reasonable belief, that such felony is about to be committed, and that the killing is necessary in order to prevent its accomplishment, and must be done while the person is in the act of committing the offense, or after some act done by him showing an evident intent to commit such an offense." 21 Cyc., 798, 799.

These authorities show that if it *appears* that a person is about to commit a felony upon another, a third party has the right to take the life of the one about to commit the felony, if he believes it is necessary, in order to prevent the felony, and a man of ordinary firmness and intelligence would have reached the same conclusion.

In the case of *State* v. *McGreer,* 13 S. C., 464, the doctrine is announced that a person may set up the plea of self-defense if he actually believes he is in imminent danger of losing his life or of suffering serious bodily harm, and under all the circumsances as they existed at the time the violence was inflicted the jury thinks he had just ground for forming such belief; yet in the leading opinion, a rule more severe is applied when a person takes the life of another in order to prevent a felony upon a third party, although the law imposes upon him the duty of preventing such felony. It seems to me that there is even stronger

reason for permitting the party taking the life of another to act upon a *bona fide* and well founded belief in the latter than in the former case.

There is no doubt a well settled and clearly defined principle that if a person becomes a participant in a difficulty between others to the extent of espousing the cause of one of them, his acts make him guilty, if the person whom he aids would have been guilty, in case the latter had committed them. This rests upon the ground that the parties thereby become confederates.

The distinction for which we contend is fully sustained by the case of *State* v. *Myers,* 13 S. C. (Mss. Dec.)

The facts in that case were as follows: Henry Myers and his son, Robert Myers, a boy under fourteen years of age, were indicted for murder. It became material, upon the trial, to connect the father and son as confederates in the transaction out of which the homicide arose. Evidence had been introduced tending to show that in the altercation that preceded the killing, Henry Myers first resorted to violence, though without the use of a deadly weapon; that the deceased first resorted to a deadly weapon,—a pistol,—and that the fatal blow was struck by Robert Myers, the son, after his father had been overpowered by the deceased, using for that purpose a knife. The Circuit Judge charged: "That if the knife in the hands of Henry Myers would have made him guilty of murder by striking Truitt, he is still guilty of murder if Truitt was at that time struck with the knife in the hands of Robert Myers, and that Robert Myers would also be guilty of murder; also, that if Henry Myers would have been guilty of manslaughter in striking Truitt with the knife, he is still guilty if his son struck the blow with the knife, and his son would also be guilty of manslaughter; that if Henry Myers, in the prosecution of the fuss with Truitt, would only have been guilty of a misdemeanor, still Robert Myers would be guilty of manslaughter."

In commenting on this charge the Court said: "This charge would appear to have assumed the confederacy be- tween Henry and Robert Myers as a fact established. If that is the proper construction of the charge, then it was clearly erroneous in assuming to determine a question of fact in issue, and material to that issue. * * * If the statement of the charge is full on the point to which it relates, which must be assumed, then it is clear that the jury may have been misled. * * * It is contended that this construction of the charge is precluded by the fact that in another place the Circuit Judge charged 'that if the minds of Henry Myers and Robert Myers united for a single moment before the killing to take the life of Truitt, they are equally guilty.' * * * Taking the two frag- ments of the charge together and the jury may have under- stood that evidence tending to show that during the greater part of the time consumed by the controversy, no com- munity of motive or concert of action existed would be ineffectual if a single moment of time was unaccounted for, in which that motive might have existed. * * * We are compelled to conclude that it was erorneous in respect of matters material to the defense of the accused. * * * The charge as to the duration of the motive previous to the act of killing would be unobjectionable in itself if the single moment during which it existed immediately preceded the act of killing as it regarded the guilt of Robert. If it did not exist at that moment, its previous existence, whether near or remote in point of time, would be altogether immaterial. It is not clear that a momentary motive could connect the origin of the difficulty with its consequences, but that question is unimportant."

It does not appear from the foregoing facts set out in the case under consideration, that Daisy Cook was attempt- ing to injure the deceased at the time the fatal shot was fired.

The testimony as to the motive that prompted Bose and Vincent Cook to take the life of Hampton Smith was con-

flicting. While there was testimony tending to show that the deceased was killed in pursuance of threats made on the previous afternoon, there was testimony also to the effect that Bose and Vincent Cook killed the deceased solely for the purpose of saving the life of their brother. It depended upon the view which the jury might take as to these facts whether the guilt of one of the defendants was to determine that of the others.

It seems to us that the distinction is overlooked in the leading opinion, between the case where there is merely an intention to prevent a felony, and that in which a third party espouses the cause of one of the participants. In the latter case the parties are held equally guilty for the reason that they have by their acts become confederates; while in the former, a third party is justified or excused, even in taking human life, if the sole motive by which he was actuated was to prevent the perpetration of a felony, and the jury thinks the facts as they appeared to him were such as might reasonably have been expected to induce such belief in a man of ordinary firmness and intelligence.

September 28, 1907. PER CURIAM. Upon careful consideration we find no question of law or fact was overlooked in the opinion of the Court.

The petition for a rehearing is, therefore, dismissed, and the order staying the remittitur is revoked.