## LOY v. STATE.

(No. 963; Decided December 30, 1919; 185 Pac. 796.)

CRIMINAL LAW—ERRORS NOT OBJECTED TO—JURY—CHALLENGE TO JURORS—DISQUALIFICATION OF JURORS—OVERRULING CHALLENGE TO JURORS—HOMICIDE—PREMEDITATED MURDER—INSTRUCTION IN HOMICIDE CASE—SELF DEFENSE—WITNESSES—CROSS EXAMINATION OF ACCUSED—ACCUSED CANNOT COMPLAIN OF EVIDENCE BROUGHT OUT BY HIS ATTORNEY.

1. It is only in extreme cases disclosing fundamental and prejudicial errors that prevented that fair and impartial trial of a defendant guaranteed to him by the Constitution, and amounting to a denial of justice, that an exception will be made to the statutory rule of law, requiring timely objections to be made and exceptions taken at the trial, to secure consideration of such alleged errors on appeal.

2. The question presented by a challenge to a juror, as having formed an opinion which would disqualify him under

Comp. Stat. 1910, Section 6207, is one of mixed law and fact, and as far as the facts are concerned, is to be decided by the Court upon the evidence.

3. In finding that a juror was not disqualified as having formed an opinion, held, not manifestly erroneous under the evidence.

4. It was harmless error to overrule a challenge to a juror for cause, where the juror was challenged peremptorily, although accused had exhausted his peremptory challenges; there being nothing to indicate that the jury which tried the case was not an impartial jury, or that any objectionable person sat upon the jury.

5. The word "premeditated", when used in reference to first degree murder, implies an interval, however brief, between the formation of the intent or design and the commission of the act.

6. Part of an instruction; "it is the fixed, deliberate, premeditated intention to kill which characterizes murder in the first degree, and the premeditated malice mentioned in the information need only to be such deliberation and thought as enables a person to appreciate and understand at the time the act is committed the nature of the act and its probable results," held, not misleading as telling the jury that all that was necessary to constitute murder in the first degree was that the defendant appreciated and understood the nature of the act and its probable results, when considered with the entire instruction.

7. To justify killing in self-defense, defendant must not only have believed he was in danger, but the circumstances must have been such as to afford reasonable grounds for the belief.

8. In determining whether a particular instruction was misleading, the instructions must be considered as a whole.

9. In a prosecution where defendant was convicted of murder in the first degree, evidence held sufficient to sustain a finding that the killing was premeditated.

10. In a prosecution for murder in the first degree, whether defendant killed deceased in self defense, held, for the jury.

11. An accused may be cross-examined by the state on matters to which he testified in chief.

12. An accused cannot complain of the admission of evidence brought out on cross-examination of witnesses by his attorney.

ERROR to District Court, Laramie County, HON. WILLIAM C. MENTZER, Judge.

Charles V. Loy was tried and convicted of murder in the first degree and brings error. The material facts are stated in the opinion.

*Marion A. Kline,* for plaintiff in error.

· Defendant's rights were not properly protected at the trial; the jury was improperly instructed as to the law of self defense and of premeditated malice; the court erred in overruling the challenge to jurors; the evidence was insufficient to support a conviction of murder in the first degree; errors amounting to a denial of justice will be reviewed even where objections were not made (Ohama v. State, 24 Wyo. 513, 12 Cyc. 708); the court erred in admitting the dying declaration of deceased, which was a conclusion and not a statement of facts; the jury was not properly instructed on premeditated malice (Parker v. State, 24 Wyo. 500; Cirej v. State, 24 Wyo. 507; Ross v. State, 8 Wyo. 351); the instruction on self-defense was erroneous (State v. Yokum, 11 S. D. 544, 79 N. W. 835; McDonall v. People (Ill.) 48 N. E. 36); the giving of erroneous instructions was not cured by giving correct ones (State v. Rolla, 55 Pac. 525; State v. Pell, 59 Pac. 174; State v. Singleton, 74 Pac. 243; Palmer v. State, 9 Wyo. 40, 59 Pac. 796); the court erred in overruling the challenge to jurors for cause (6207 C. S.; Sullins v. State, 79 Ark. 127); the ruling was prejudicial since defendant had exhausted all peremptory challenges before the jury was complete (State v. Beatty, 45 Kan. 492; 25 Pac. 899; State v. Crofford, 96 N. W. 899); the evidence was insufficient to sustain first degree murder (Parker v. State, *supra*).

*W. L. Walls, Attorney General,* and *T. Paul Wilcox, Deputy Attorney General,* for defendant in error.

Lack of preparation or alleged incompetency of defendant's counsel is not grounds for a new trial except in cases of actual prejudice (12 Cyc. 708; Darby v. State, 79

Ga. 63; State v. Currans, 46 Kans. 750; Hudson v. State, 76 Ga. 727; State v. Dreher, 137 Mo. 11; State v. Benge, 61 Iowa 648); the instructions on premeditation are supported by authority (Parker v. State, 24 Wyo. 491); instructions are to be considered together (16 C. J. 1049); the instruction on the question of self defense fairly stated the subject (Parker v. State, 24 Wyo. 491); the overruling of challenges to jurors was not erroneous (Bryant v. State, 7 Wyo. 311; Carter v. Ter., 3 Wyo. 193); the verdict is fairly supported by the evidence.

BEARD, CHIEF JUSTICE.

The plaintiff in error, Charles V. Loy, was convicted in the District Court of Laramie County of the crime of murder in the first degree for the killing of one William Ashford, and sentenced to imprisonment in the penitentiary for life. He brings the case to this court by proceedings in error.

The motion for a new trial, which was denied, assigns the following alleged errors, viz: "(1) Because the verdict of the jury and the judgment entered thereon are contrary to law. (2) Because the verdict of the jury and the judgment entered thereon are contrary to the evidence. (3) Because there is no evidence to show that the defendant premeditated the killing of the deceased and as premeditation is one of the material allegations of a charge of murder in the first degree, there can be no legal conviction on such charge unless evidence is introduced establishing the fact of premeditation. (4) Because the court erred in overruling the challenge for cause made by the defendant to the juror Louis Veta, and compelled the defendant to exercise one of its peremptory challenges on said juror, said juror having shown on his *voir dire* that he was biased and prejudiced against this defendant. (5) Because the court erred in overruling the challenge of the defendant for cause to the juror H. C. Klein, said juror having shown on his *voir dire* that he was biased and prejudiced against the defendant." The petition in error contains the same as-

signments of error and also the overruling of the motion for a new trial.

In addition to the alleged errors assigned in the motion for a new trial, counsel who represents the plaintiff in error in this court, but who did not represent him on the trial, has earnestly urged in his brief and oral argument, that although no objections to any of the instructions given by the court to the jury, or to the admission of certain testimony, or took exceptions thereto on the trial, nevertheless, an examination of the whole record will disclose such fundamental and prejudicial error, as will show that defendant below was deprived of a fair and impartial trial, and for that reason he should be granted a new trial. This court has in a few cases of murder in the first degree in which the jury did not add to its verdict "without capital punishment", and the death penalty was imposed, considered the entire record, although it did not disclose objections and exceptions, and from such examination arrived at the conclusion that it disclosed such fundamental and prejudicial errors as had deprived the defendant of that fair and impartial trial guaranteed to him by the constitution, and amounted to a denial of justice; and, so concluding, awarded a new trial (Parker v. State, 24 Wyo. 491, 161 Pac. 552; Ohama v. State, 24 Wyo. 513, 161 Pac. 558; Cirej v. State, 24 Wyo. 507, 161 Pac. 556). It is only in such extreme cases that the statutory rule of law that to secure a consideration in this court of alleged errors occurring upon the trial, timely objections must be made and exceptions taken.

In the present case exceptions were duly taken to the overruling of the challenges to the jurors Veta and Klein. It is sufficient to say that there is nothing disclosed in the testimony of the juror Veta on his *voir dire* which would disqualify him as a juror under the statute, and there was no error in overruling the challenge to him. The juror Klein testified on his *voir dire* that he knew the deceased but not personally. That he had read accounts of the homicide in the newspapers and had talked about it with others in whom he had confidence, and from what he had read and

from what had been told him he had formed and expressed an opinion as to the guilt or innocence of the defendant. That he had heard others express an opinion as to the guilt or innocence of defendant. It is difficult to determine the state of mind of this man from his answers. When asked if he could enter upon the trial with his mind free from the impressions he had and let his mind be made up solely from the evidence, he answered, "I don't know whether I could or not." And when asked if he could lay aside any impression he had, he answered, "I don't believe I could;" but in answer to a question by the court he said he could try the case fairly and impartially. And again he stated that he would give the defendant the benefit of the presumption of innocence until it was overcome by competent evidence. Being further questioned by counsel for defendant, he was asked: "Q. Is it not a fact, Mr. Klein, that you have at this time a certain amount of prejudice, bias and feeling in this case? A. Well, as I have said before, I have expressed myself about the case and talked about it. Q. And you still have the same opinion you have had all the time? A. I have from the present evidence, yes. Q. Have you talked with persons who assumed to know something about the case? A. As to that I couldn't say. I was out of town at the time it happened. Q. But the persons who talked to you expressed an opinion themselves and told you certain things? A. Yes sir. Q. And they assumed to know some of the things they told you? A. I don't know whether they did or not; they thought they did. Q. And they were men upon whom you placed reliance and you believed them to be responsible people? A. Yes. Q. And you had confidence in what they said? A. Yes." Question by the court: "Q. Regardless of what has been told you by these people, and regardless of what you may have read, could you still lay any opinion you have aside and render a fair and impartial verdict on the evidence as introduced here on the stand and the instructions of the court? A. I think so." By counsel for defendant: "Q. And you formed an opinion because of rumor; you don't know

whether those facts were true or not? A. No, sir. Q. It was simply rumor? A. That is all. Q. And even having heard this, you swear on oath here that you could render a fair and impartial verdict on the evidence you hear here and on nothing else? A. Yes, sir."

The question presented by the challenge is one of mixed law and fact, and, as far as the facts are concerned, is to be decided by the court upon the evidence. Chief Justice Waite, speaking for the court, in Reynolds v. U. S., 98 U. S. 145, in considering the question, said: "It is clear, therefore, that, upon the trial of the issue of fact raised by a challenge for such cause, the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law would necessarily raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court unless the error is manifest. No less stringent rules should be applied by the reviewing court in such case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made to clearly appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the conscience or discretion of the court." The court, in Carter v. Territory, 3 Wyo. 193, 18 Pac. 750, 19 Pac. 443, quoted at length from the opinion in that case, and approved and followed the rule therein stated. Approved and followed in Bryant v. State, 7 Wyo. 311, 51 Pac. 879, 56 Pac. 596.

The statute, Sec. 6207, Comp. Stat. 1910, provides:

"In the trial of criminal cases it shall not be cause for challenge that a person called to act as a juror has formed or expressed an opinion as to the guilt or innocence of the accused from newspaper reports and rumor, or from either of them, if such person swear that he can impartially try

the case according to the law and evidence, notwithstanding such opinion." We regard the question of the qualification of this man to act as a juror in the case a very close one; but the trial court found him qualified on the evidence before it, and we are not prepared to hold that the finding was not supported by sufficient evidence, or that the ruling was manifestly erroneous. But even if it was error to overrule the challenge, it is not made to appear that it was prejudicial to the defendant. Both of the men challenged were challenged peremptorily by the defendant and did not sit as jurors on the trial. It is true the defendant had to use peremptory challenges as to them, and that he exhausted his peremptory challenges; but there is nothing in the record indicating, nor has it been claimed, either in the brief or in oral argument, that the jury which tried the case was not an impartial jury, or that any objectionable person sat upon the jury. Defendant was entitled to a fair and impartial jury, but to nothing more. And in so far as it has been made to appear here he had such a jury; and was not, therefore, prejudiced by the overruling of the challenge interposed to Mr. Klein for cause.

Two instructions given by the court to the jury are here complained of, but neither of them was objected to on the trial. The jury was instructed, "The word 'premeditated' as used in the information and in the statute means to think beforehand. It implies an interval, however brief, between the formation of the intent or design and the commission of the act. To find the defendant guilty of murder in the first degree, you must find from the evidence beyond a reasonable doubt that he killed the deceased purposely and with premeditated malice as herein defined; but it is not necessary that such premeditation should have existed in the mind of the defendant for any particular length of time before the killing; it is sufficient if he has deliberately formed in his mind a determination to kill and has thought over it before the shot was fired—if you find that he did fire the fatal shot, and fired the shot in pursuance of such deliberate purpose and design. It is the fixed, deliberate,

premeditated intention to kill which characterizes the crime of murder in the first degree, and the premeditated malice mentioned in the information need only be such deliberation and thought as enables a person to appreciate and understand at the time the act is committed the nature of the act and its probable results."

It is the last clause of the instruction which is claimed to be erroneous and in conflict with the former part thereof; and it is argued that the jury must have understood from this that all that was necessary to constitute murder in the first degree was that the defendant at the time he fired the shot appreciated and understood the nature of the act and its probable results. We do not agree with that contention. The court was there speaking of the kind and character of the deliberation, and not of the length of time it had existed in the mind of the defendant. The word "premeditated" had already been clearly and correctly defined, and the jury was told that to find defendant guilty of murder in the first degree, it must find from the evidence beyond a reasonable doubt that he killed the deceased purposely and with premeditated malice "as herein defined". Considering the entire instruction, we think it not only improbable, but also impossible for the jury to have been misled. Counsel for defendant rely upon the cases in 24 Wyo., above cited. But in those cases the instructions were materially different from the one here. In those cases the definition of premeditated malice was radically erroneous.

On self-defense the court instructed the jury as follows: "The court instructs the jury that the right to defend one's self against danger, not of his own seeking, is a right which the law not only concedes but guarantees to all men. The defendant may, therefore, have killed deceased and still be innocent of any offense against the law. If, at the time he shot deceased, he had reasonable cause to apprehend on the part of deceased, a design to do him serious personal injury, and there was reasonable cause for him to apprehend immediate danger of such design being accomplished, and to avert such apprehended danger, he shot, and at the time he

did so, he had reasonable cause to believe, and did believe, it necessary for him to shoot in the way he did to protect himself from such apprehended danger, then, and in that case, the killing was not feloneous, but was justifiable, and you ought to acquit him upon the ground of necessary self-defense. It is not necessary to this defense that the danger should have been actually real, or that the danger should have been impending and immediately about to fall. All that is necessary is that defendant had reasonable cause to believe, and did believe, these facts. But before you acquit on the ground of self-defense, you ought to believe that defendant's cause of apprehension was reasonable. Whether the facts constituting such reasonable cause have been established by the evidence, you are to determine, and unless the facts constituting such reasonable cause have been established by the evidence in the case, you cannot acquit in such case on the ground of self-defense, even though you may believe that defendant really thought he was in danger." The only objection urged against this instruction is to the language, "you cannot acquit in such case on the ground of self-defense, even though you may believe that defendant really thought he was in danger." Counsel states his contention in his brief as follows: "If the danger appeared real to the defendant and he acted in the honest belief that he was in danger, then he was entitled to an acquittal on the ground of self-defense." Counsel overlooks the important fact that the belief must be based upon reasonable grounds. Defendant must not only believe he is in danger, but the circumstances must be such as to afford reasonable grounds for the belief.

In Parker v. State, *supra*, it is said: "The assault must be of such character as to create in the mind of the defendant a reasonable belief that the danger is imminent," etc. See also 25 A. & E. Enc. L. (2nd Ed.) 262, and cases there cited. The court also correctly instructed the jury, "that to entitle a defendant charged with murder to an acquittal on the ground of self-defense, he need not establish his defense by a preponderance of evidence. It is sufficient if

the evidence is such as to create in the minds of the jury a reasonable doubt of his guilt." Considering the instructions as a whole, as they must be considered by the jury and this court, we do not discover anything therein prejudicial or erroneous, or calculated to mislead the jury.

It is urged that there is no evidence of premeditation. That requires a reference to the testimony. The deceased was a colored man, a porter at the Albany Hotel in Cheyenne. On the day of the homicide he came on duty at about seven o'clock in the evening and found the defendant in the lobby of the hotel with his hand baggage, and stated that he was going to take the 11:15 p. m. train for Casper. Deceased informed him that he could not get on the sleeper until 10 o'clock, to which he replied: "I don't want a nigger to tell me anything." Sometime later defendant was in the cafe adjoining the lobby talking to one Christy, the cook, and asked for his coat, which he claimed to have left in a rack in the lobby. Christy found the coat in the cloak-room, and he or deceased took the coat to defendant in the lobby, when deceased told him that he (deceased) had put it in the cloak-room, whereupon defendant accused him of trying to steal it. Defendant states that deceased then said to him, "I don't want your coat, and for that, you s— of a b—, I'll knock you on your ass." I said, "I don't think you will," and he said, "Follow me and I'll show you." The deceased then went into the saloon adjoining the lobby or cafe. There is some difference between the testimony of defendant and Christy as to the language used, but the substance is the same, and we have given defendant's version of it. In a short time thereafter, probably eight or ten minutes, deceased returned to the lobby and took his seat in the rear of the lobby. Defendant went to the desk and he says he was angry and was telling the clerk how nicely he had been treated up to that time. The clerk rung a bell calling deceased to the desk. When he came within a few feet of defendant, defendant testified that deceased said: "I'll get you this time." "I stepped back a step or two and said: 'Don't come up here', and he kept on coming, and put his

right hand in his hip pocket, and before he could get his hand out I shot him. When he put his hand in his pocket I said, 'men have been shot for less than that'." The policeman who arrested defendant in the hotel lobby in a few minutes after the shooting testified that he asked him why he shot deceased. "He told me he had given him some of his guff and he wasn't in the habit of taking that off a nigger." The testimony of the clerk tends to corroborate the defendant in that he said to deceased, "don't come up here", and that deceased put his hand back toward his hip pocket and that some words passed between them which he did not understand; but he admitted that he said nothing about deceased putting his hand toward his pocket when testifying before the coroner's jury; said nothing about that to the deputy sheriff who interviewed him soon after the shooting; and admitted that he stated to the deputy when asked why, in his estimation, Loy had fired the shot, he said he was at a loss to explain that, he didn't know. "I am from the south; I don't like a nigger, but I hate to see any human being shot down as this man was without any cause." It appears the deceased was not armed. Two men who were in the cafe at the time the shot was fired went into the lobby immediately, and they testified that on entering defendant had his hand on the hotel register with the pistol in his hand; that he turned and came toward them with the pistol still in his hand and said, "You are white men, you are all right," or "You are white men and are in no danger." That he then walked around deceased, who was lying on the floor, and said, "I'll teach a nigger to tell me he will set me on my ass." He then said to deceased, in substance, you are not hurt. I know where I shot you. I never miss a shot. I just eased one into you gently. The dying statement of deceased was introduced in evidence in which he stated that when the clerk called him and he approached the counter where defendant was standing, defendant "was still beefing about being as good a man as I was. He said he had killed a better nigger than I was. Then and there pulled his revolver and shot me. * * * Before he shot

me I had not made any threats toward him or endeavored in any way to harm him." His statement as to what occurred about the overcoat, while in different language, does not very materially differ from that above set out. It will thus be seen that as to what was said and done by defendant and deceased there is a conflict in the evidence. Whether the shooting was premeditated on account of what had previously occurred between the parties, or was the result of an assault by the deceased immediately before the shot was fired was a question for the jury. The several statements of the defendant almost immediately after the shooting all tend to show that it was the former. In none of these statements did he claim he had been assaulted at the time and that he shot in self-defense. His first statement after the shot was fired that "he would teach a nigger" etc., could have referred only to the language he testified deceased used toward him at the time he accused deceased of trying to steal his coat. In our opinion there was sufficient evidence to warrant the jury in finding as it did.

It is further contended that immaterial evidence prejudicial to defendant was admitted. Ordinarily it would be sufficient to say that it was admitted without objection. But a careful examination of the record discloses that the evidence now claimed to have been erroneously admitted was in most part brought out on cross-examination of defendant on matters to which he testified in chief, or on cross-examination of other witnesses by defendant's attorney.

Counsel for plaintiff in error contends that the attorneys for defendant who conducted his defense were inexperienced, unfamiliar with the practice in this state, and negligent in not making objections and preserving exceptions, and in going to trial without due preparation. But the record does not sustain that contention. The case appears to have been fairly and fully presented to the jury, and it is not shown that defendant was deprived of any defense which he had.

The judgment of the District Court is affirmed.

POTTER, J., and BLYDENBURGH, J., concur.          *Affirmed.*