Judith Elayne LEEPER, Appellant (Defendant below),

v.

The STATE of Wyoming, Appellee (Plaintiff below).

No. 4854.

Supreme Court of Wyoming.

Jan. 19, 1979.

Joe R. Wilmetti, Rock Springs, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Peter J. Mulvaney, Sr. Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J.*, and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

McCLINTOCK, Justice.

On the afternoon of January 16, 1977, John Friedrich Johannsen was shot and killed by Judith Elayne Leeper. Charged with murder in the first degree, she was convicted after jury trial of the lesser included offense of murder in the second degree. She appeals this conviction to this court and claims the homicide was justified, or excused, by self-defense, or defense of another, and error in the instructions. We affirm the trial court.

The facts are brief. On the date in question, Judith and Earl Leeper stopped for a drink at the Eagle's bar in Green River. Both were members of that organization. At the Eagle's, they met several other members, including John Johannsen. All had been drinking, but apparently not heavily. The Leepers sat near Johannsen, and another individual, Pat Woods. A discussion followed concerning the internal management of the organization, and the activities, abilities, and merits of the participants. Johannsen and the Leepers had had disputes before this date, and the argument rehashed these incidents. None of the participants felt, however, that this argument was heated, or of a violent nature. At some point during the course of these discussions, either Earl Leeper or Johannsen invited the other outside to settle the dispute by fists. They rose and left the bar by a side exit, and began the fight. Judith Leeper and Woods remained at the bar. After a brief interval of perhaps two to three minutes, Judith, worried about Earl, removed an object from her purse, which proved to be the murder weapon, a .22 caliber pistol, and walked towards the exit.

She opened the door that led immediately outdoors, and stationed partially in and partially out, held the pistol on Johannsen, and warned him to leave her husband alone. The other witnesses in the bar could not see her, the fight, or the fatal shot. One testified that he heard the warning given. Judith claims she warned Johannsen twice to leave her husband alone.

Johannsen, who had bested Earl Leeper in the fight, for it appears he was the stronger and younger of the two, was leaning over him, choking him, and pushing his face in the snow. It is undisputed that Earl Leeper was offering no resistance at that time, and was apparently at the mercy of Johannsen. Indeed, Judith testified she believed Earl was dead. At one time she described him as being in danger of his life, but afterwards Earl Leeper did not appear visibly injured to any of the witnesses.

After the warning, Johannsen stood upright, turned, faced Judith, then turned his back to her, and again faced Earl. It was at that point that Judith fired the fatal shot. She aimed at the left shoulder, and hit the mark. The bullet did not remain there, but richocheted off the rib cage, crossed through the lower left lung, and tore the descending thoracic aorta, coming to rest in the right pleural space. Johannsen slumped, went to his knees, and bled to death in minutes. Judith and Earl attempted to help Johannsen up, but soon realized that he was nonresponsive. They believed him drunk and perhaps did not at that time realize the mortal nature of the wound. When they did recognize the severity of the problem, they reentered the bar, where Judith indicated she wished to call the police. This had already been done. The police responded immediately, and found Johannsen dead.

Judith Leeper admits that she shot Johannsen, but claims self-defense, or defense of another. She states she was deathly afraid of Johannsen, and when he turned

---

* At the time of oral argument, GUTHRIE was Chief Justice. He retired from the Court on December 31, 1978. By order of the Court, entered on January 1, 1979, he has been retained in active judicial service pursuant to Article 5, Section 5, Wyoming Constitution, and § 5–1–106(f), W.S.1977.

towards her, she feared he would "finish off" Earl, then assault her. Nevertheless, she was "calm," and in control of herself throughout the incident. No one attempted to stop the fight, nor did Judith ask for help for she claimed she felt it would do no good. Earl testified that, due to his position, he could not see the events that occurred, but heard his wife's warnings to Johannsen.

It appears there was never any threat made to Judith Leeper by Johannsen, until she had him at gunpoint. He then turned his back on her when the fatal shot was fired. Judith never ran for help or cover, and never requested assistance or intervention in the fight, even though she was a matter of a few feet from the doors of the bar.

Appellant claims error in the failure of the court to give a requested instruction based on the rule of the *Eagan* case, *Eagan v. State*, 58 Wyo. 167, 128 P.2d 215 (1942), to the effect that as Judith was the sole witness to the event, her testimony should be accepted if not improbable or not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, and if her credibility has not been impeached. The court refused.

■ We need not reach the substantive merits of the alleged error as a review of the record fails to disclose any objection to the refusal. The rule on appeal is clear. Failure to object is considered as a waiver of whatever error occurred. *Hampton v. State*, Wyo., 558 P.2d 504 (1977); *Montez v. State*, Wyo., 573 P.2d 34 (1977); *Hays v. State*, Wyo., 522 P.2d 1004 (1974). Unless some plain and fundamental error was committed, the issue is foreclosed.

■ The plain error rule is to be applied only in exceptional circumstances. *Hampton v. State*, supra; *Hays v. State*, supra. The standard we established in Hampton requires that we carefully ascertain what in fact happened at the trial that is alleged as error; that the appellant demonstrate the existence of a clear and unequivocal rule of law that was violated; and that the error or defect adversely affect some substantial right in order that it not be found harmless.

■ Here, we cannot say that the appellant did demonstrate the violation of a clear and unequivocal rule of law. The *Eagan* rule requires the defendant to be the *sole* witness to the crime. Both Judith and Earl witnessed the incident here and survived to testify. Others in the bar testified to preliminary matters, the warning, and the shot. We cannot find that the *Eagan* rule should have been applied, and we are unwilling to extend *Eagan* to cover the facts of this case. *Eagan v. State*, supra; *Nunez v. State*, Wyo., 383 P.2d 726 (1963); *Cullin v. State*, Wyo., 565 P.2d 445 (1977). The *Eagan* rule is not to be applied unless all of the conditions are fulfilled. *Raigosa v. State*, Wyo., 562 P.2d 1009 (1977). Here, Judith was not the sole witness. We do not feel *Leitel v. State*, Wyo., 579 P.2d 421 (1978) requires a different conclusion.

■ We find no merit in the claim of self-defense asserted by Judith Leeper. Self-defense will justify a homicide when a reasonable person deems it necessary in order to avoid infliction of death or great bodily harm upon his or her person. To justify a homicide on this ground, it must appear that the defendant was in great peril of death or serious bodily harm, or had reasonable grounds for so believing. It must appear that the killing was a necessary and reasonable means of avoiding the threatened harm, and the facts and circumstances surrounding the event must be such as to afford such grounds for that belief. *Nunez v. State*, supra; *Durham v. State*, 29 Wyo. 85, 210 P. 934 (1922); *Loy v. State*, 26 Wyo. 381, 185 P. 796 (1919).

■ Here, the jury was instructed on the law of self-defense, which if believed, would preclude conviction for the homicide. The jury found Judith guilty of murder in the second degree. We do not, on these facts, see the defense of self. *Durham v. State*, supra. Judith never requested assistance in stopping the assault, although she was close to a barroom door. She volunteered to the rescue and made no effort to retreat. She shot Johannsen in the back. Even though

she claimed she feared for her life, that fear was not reasonable. Judith was not acting in her own defense, but in the defense of her husband, Earl. If anything, she was acting in defense of another.

One asserting the justification of defense of another steps into the position of the person defended. Defense of another takes its form and content from defense of self. The defender is not justified in using force unless he or she reasonably believes the person defended is in immediate danger of unlawful bodily harm, and that the force is reasonable and necessary to prevent that threat. The defender can only use that degree of force necessary to relieve the risk of harm. *Commonwealth v. Martin*, Mass., 341 N.E.2d 885 (1976); *State v. Adams*, 2 N.C.App. 282, 163 S.E.2d 1 (1968); *State v. Washington*, 185 Neb. 329, 175 N.W.2d 620 (1970); *State v. Hewitt*, 205 S.C. 207, 31 S.E.2d 257 (1944); *Stanley v. Commonwealth*, 86 Ky. 440, 6 S.W. 155 (1887); *State v. Mounkes*, 88 Kan. 193, 127 P. 637 (1912); *Pond v. People*, 8 Mich. 150 (1860); *State v. Cook*, 78 S.C. 253, 59 S.E. 862 (1907); *Brockwell v. State*, Ark., 545 S.W.2d 60 (1976); *State v. Alston*, 35 N.C.App. 691, 242 S.E.2d 523 (1978); *Morgan v. State*, Tex.Cr.R., 545 S.W.2d 811 (1977); *State v. Meyer*, 96 Wash. 257, 164 P. 926 (1917); *Commonwealth v. Russogulo*, 263 Pa. 93, 106 A. 180 (1919); 1 Wharton Criminal Law and Procedure, § 218, p. 480 (1957). The defense is of ancient origin, and of uniform application. 2 W. Blackstone, Commentaries *3–4. This defense does not allow the defender to do more than the one defended.

The rule allows defense from unlawful attacks, and under the traditional defense, a defender was not justified in coming to the defense of an aggressor or one who initiated the battle. As the rights of the defender are coterminous with the right of the defense of self, and as one who initiated a battle had no right to self-defense absent abandonment, withdrawal or retreat available or communicated, one who defends an aggressor does so at his or her peril. *Crowder v. State*, 76 Tenn. 669 (1881); *Wood v. State*, 128 Ala. 27, 29 So. 557 (1900); *State v. Turner*, 246 Mo. 598, 152 S.W. 313 (1912); *Stanley v. Commonwealth*, supra; *Murphy v. State*, 188 Tenn. 583, 221 S.W.2d 812 (1949); *State v. Cook*, supra; *Mack v. State*, Ala.Cr.App., 348 So.2d 524 (1977). Where two engage unlawfully in a mutual fight, of whatever character, the law does not authorize anyone to take sides and aid one to overcome his adversary. Perkins, Criminal Law, 2d Ed., 1969, Ch. 10, § 5, p. 1020; *Utterback v. Commonwealth*, 105 Ky. 723, 49 S.W. 479, 20 Ky.L.R. 1515, 88 Am.St.Rep. 328 (1899); *Adams v. State*, 48 Tex.Cr.R. 452, 93 S.W. 116 (1906); and citations above. Where both agree to fight, both are aggressors. Earl Leeper and Johannsen mutually agreed to settle their differences by combat. Both voluntarily left the bar. Which of the two initially gave the invitation appears to us immaterial in such a case. In addition, Judith was aware of the consensual nature of the fight, hence, we restrict our holding to this situation, and distinguish the cases involving the ignorant defender, such as *State v. Fair*, 45 N.J. 77, 211 A.2d 359 (1965). Judith made no effort to dissuade the combatants. After they left the barroom, she thought for two or three minutes without comment. Then she rose, removed the weapon from her purse while still at the bar and without knowledge of the battle, and walked out the door. She requested no help and did not call for assistance. She was calm and collected, gave her warning and fired.

Judith Leeper was not, under these facts, justified in using deadly force in defense of her husband as he would not have been justified. Earl was a mutual combatant. A difficult situation might arise if the two had agreed to use nondeadly force, and Johannsen had escalated the battle to a mortal level, but the facts, as the jury was entitled to find them, do not support that conclusion. Earl was on the ground, face down, but Johannsen at the time of the fatal shot was not in attack. He was standing over him. Afterward, Earl arose immediately and with Judith's help attempted to revive Johannsen. All witnesses testified

Earl appeared to have suffered no visible injury, no marks on his person, or torn clothing. The jury was entitled to believe Earl was not in great peril of death or great bodily harm, and deadly force was unjustified by him or on his behalf. As the killing was unjustified, and as all the evidence shows no heat of passion, the conviction on murder in the second degree appears valid. Indeed, Judith testified that she believed Earl dead. If she is to be believed, this fact, together with the other facts, would indicate a revengeful mind. Indeed, the absence of a passionate character under such circumstances could have been considered as evidence of malice. *People v. Curtis*, 52 Mich. 616, 18 N.W: 385 (1884).

We hold that where two persons have mutually engaged in combat of a non-deadly nature, as the jury was entitled to believe here, no one is justified to defend by use of deadly force. To do so is murder. The State has satisfied the essential elements of the crime.

The conviction is affirmed.