E. Ben TATMAN, Appellant (Plaintiff),

v.

Gary L. CORDINGLY, Appellee
(Defendant).

No. 83–114.

Supreme Court of Wyoming.

Nov. 23, 1983.

C.M. Aron and Sid L. Moller of Aron & Hennig, Laramie, for appellant.

Paul B. Godfrey of Godfrey & Sundahl, Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

E. Ben Tatman, appellant, sued Gary L. Cordingly, appellee, for assault and battery after the two had an altercation. Judgment was entered pursuant to a jury verdict finding that Cordingly acted out of self-defense. Tatman appeals the judgment on the grounds of faulty jury instructions and lack of sufficient evidence to support the verdict.

We affirm.

There was a dispute between Tatman and Cordingly. This dispute precipitated a confrontation on June 1, 1982, in Albany County near the Old Fort Fetterman Road, miles from the nearest town. Tatman was 66 years old at the time of the incident, Cordingly in his early 20's. As a result of the fight that occurred Tatman was hospitalized for eight days and incurred substantial medical expenses. There were no witnesses to the scuffle other than the parties themselves, and they disagree as to the details. Both parties contend that the other was the aggressor.

The issues presented in this case as stated by appellant are:

"1. Whether the Court below erred in refusing to give Appellant's proposed instructions and verdict form to the effect that each of two parties engaged in a fight is liable for injuries he inflicts on the other.

"2. Whether the verdict was contrary to the evidence; specifically, whether a verdict of reasonable self-defense could be sustained where the defender admitted he was struck no more than once and was uninjured yet he struck the other party violently many times and caused severe injuries."

## I

First we will discuss the second issue dealing with the sufficiency of the evidence. The standard of review we have repeatedly used in determining if the evidence is sufficient to support the verdict is that "[t]he trier of facts is the sole judge of the weight to be given to all testimony, and the matter of determining where the preponderance of the evidence lies is within the sound discretion of the trier of facts." *Condict v. Hewitt,* Wyo., 369 P.2d 278, 279 (1962). When reviewing cases on appeal, we are compelled to accept the evidence of the prevailing party as true, leaving out of consideration entirely the evidence of the unsuccessful party that conflicts with it, and giving to the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it. *Jelly v. Dabney,* Wyo., 581 P.2d 622 (1978).

Although there was much conflicting testimony in this case, we, as a court of review, will not disturb the findings of the trier of fact unless the findings are so totally in conflict with the great weight of evidence that they can be said to be irrational. *Agar v. Kysar,* Wyo., 628 P.2d 1350 (1981).

In this case, judgment was entered on a jury verdict finding that Tatman committed a battery and Cordingly exercised reasonable self-defense. The jury was certainly entitled to believe Cordingly's testimony and find in his favor. There was evidence that Tatman had a bad temper, that he carried a gun and used it often, that he ran over Cordingly's motorcycle with his pickup truck, that Tatman struck Cordingly first, that Tatman was repeatedly trying to get to his rifle and that Cordingly feared for his life. From our review of the record, we find sufficient evidence for the jury to decide as they did.

## II

The appellant contends that the trial court erred in refusing two of his jury instructions. The first instruction denied reads:

"When it appears that a fight merely erupted between two parties and it is not clear who was the aggressor, then each party is liable for any injury inflicted on the other."

This proposed instruction misstates the law. Each party is liable for the injury inflicted upon the other when there is a mutual affray. *Condict v. Hewitt,* supra. A mutual affray, however, differs from the situation where it is not clear who is the aggressor. Mutual affray is defined as a fight in which both parties willingly enter and is similar to a duel. Black's Law Dictionary 920 (5th ed. 1979). A mutual affray, therefore, requires mutual consent. There was no evidence that there was mutual consent to fight. In fact, the evidence is to the contrary; both parties claim that they were attacked by the other and react-

ed in self-defense. Therefore, regardless of whose side of the story is believed, there was no mutual affray.

■ The second instruction at issue was partially denied by the trial court. The refused portion of plaintiff's proposed Instruction 3 reads:

" * * * Thus, even acting in self-defense, a person may be liable for injury inflicted upon the aggressor. That is the case when the defender is not justified in his belief that he was in danger, or when the defender uses excessive force, or when the defender continues to exert force after the aggressor is rendered disarmed or helpless."

This instruction is an accurate statement of Wyoming law on self-defense and its limits. The trial judge did, however, properly instruct the jury on these matters. The court gave jury Instructions 7, 8, and 9 which read:

### "INSTRUCTION NO. 7

"When it is apparent to a person that he is threatened with a battery, he has the right to determine from appearances and the circumstances then existing the necessity of resorting to force to repel any such apparent, threatened battery, and he has the right to do what seems reasonably necessary to protect himself against any such apparent, threatened attack, whether it is real or not, provided he believes it to be real."

### "INSTRUCTION NO. 8

"The defendant however is not liable to the plaintiff on his claim of battery if the affirmative defense of self-defense of a person is established. This defense is established if you find both of the following:

"1. The defendant honestly and reasonably believed (although perhaps mistakenly) that under the circumstances it was necessary for him to use force to protect himself against an actual or apparent threatened harmful contact; and

"2. The defendant used no more force than a reasonably prudent person would

have used under the same or similar circumstances to protect himself against the actual or apparent threatened contact."

### "INSTRUCTION NO. 9

"A person who is battered by another has the privilege of self-defense, but that privilege ends when the aggressor is disarmed or helpless, or when all the danger has clearly passed."

■ Instructions 8 and 9 adequately cover the issue of self-defense and where the privilege of self-defense ends. It was not necessary for the court to duplicate these instructions by giving plaintiff's proposed Instruction 3 in full. *Britton v. State,* Wyo., 643 P.2d 935 (1982); and *Scheikofsky v. State,* Wyo., 636 P.2d 1107 (1981).

■ Instruction 7, however, does not fully state the law in regard to the apparent necessity for acting in self-defense. According to Prosser:

"The privilege to act in self-defense arises, not only where there is real danger, but also where there is a reasonable belief that it exists. * * *

"The belief must, however, be one which a reasonable man would have entertained under the circumstances. * * * [I]t is not enough that he really believes that he is about to be attacked, unless he has some reasonable ground for the belief. * * *" Prosser, Torts, § 19, p. 109 (4th ed. 1971).

The Restatement of the Law (Second), Torts (2d), § 63(1), p. 98 (1965), states:

"An actor is privileged to use reasonable force, not intended or likely to cause death or serious bodily harm, to defend himself against unprivileged harmful or offensive contact or other bodily harm which he reasonably believes that another is about to inflict intentionally upon him."

Therefore, the standard to be applied in determining if there is the apparent necessity to act in self-defense is both subjective and objective. Not only must a person believe that a real danger exists, but that belief must also be reasonable. In the

court's Instruction 7, a subjective standard is set out but the objective, "reasonable," standard is missing. To claim self-defense, the defendant's belief as to the necessity of defending himself must be based upon reasonable grounds. A subjective fear does not by itself entitle the defendant to use self-defense. *Loy v. State,* 26 Wyo. 381, 185 P. 796 (1919). We recognize that *Loy* was a criminal case, but the principle we have just discussed is substantially the same in both criminal and civil cases. *Jelly v. Dabney,* supra; and 6A C.J.S. Assault and Battery, § 19, p. 342 (1975).

■ This incomplete instruction is not reversible error. When the instructions given by the court are viewed in their entirety, a true and accurate representation of the law is given. Instruction 8 requires that the jury find both a subjective and an objective belief by the defendant that it was necessary for him to protect himself. Appellant has not established any prejudice as a result of this incomplete instruction or that a different result would have occurred had another instruction been given. *Walton v. Texas Gulf, Inc.,* Wyo., 634 P.2d 908 (1981); and *Pure Gas & Chemical Co. v. Cook,* Wyo., 526 P.2d 986 (1974). We find that the error was harmless.

The verdict form given in this case was a special verdict form wherein the jury was asked to answer several questions.[1] The appellant contends that it was error for the trial court to refuse to ask the jury who was the aggressor, and that the verdict should have more clearly allowed the jury to find that both parties committed acts of battery.

■ The aggressor in a confrontation is not entitled to exercise the privilege of self-defense unless and until he attempts to withdraw from the conflict. *Jelly v. Dabney,* supra. Appellant contends that the jury did not determine who was the aggressor or that the jury found Cordingly to be the aggressor but allowed the privilege of self-defense to stand without withdrawal from the conflict. We find that neither contention has merit.

■ In this case, the jury was required to determine who was the aggressor but it was not a question on the special verdict form. By a review of the instructions it is clear that the jury had to make an initial determination as to who was the aggressor, and that the person acting to protect himself was not the aggressor.[2]

Instruction 8 explains that the use of the privilege of self-defense only arises when the defendant honestly and reasonably believes that there was a need for him to use force to protect himself against an actual or apparent threatened harmful contact. The defendant can use no more force than a reasonably prudent person would use under the same or similar circumstances to protect himself against the actual or apparent

---

1. The special verdict form reads as follows:

"SPECIAL VERDICT FORM

"The Jury will answer the following questions submitted by the Court:

"1. Was a battery committed on June 1, 1983?

"___X___ YES

"_____ NO

"IF THE ANSWER TO THE ABOVE QUESTION IS YES, PLEASE STATE WHO COMMITTED A BATTERY:

"_____ GARY CORDINGLY

"___X___ BEN TATMAN

"2. If Ben Tatman committed a battery, did Gary Cordingly exercise reasonable self-defense?

"___X___ YES

"_____ NO

"3. If you find that Gary Cordingly committed a battery or that he did not exercise reasonable self-defense if Ben Tatman committed a battery, please determine the following damages, if any, for Ben Tatman:

"Medical Expenses . . . . . . . . . . . . $ 2,892.70

"General Damages . . . . . . . . . . . . $_____

" TOTAL: $_____

"4. Was Gary Cordingly guilty of willful and wanton misconduct such that punitive damages should be awarded?

"_____ YES ___X___ NO"

2. Although the aggressor may change during a confrontation, here we speak of the initial aggressor.

threatened contact. Instruction 9 goes on to say that the privilege of self-defense ends when the aggressor is disarmed or helpless, or when all danger has clearly passed.

The instructions assume that one person is the aggressor and the other person the protector. To properly apply these instructions to the facts, the jury must cast the parties in one role or the other. Although it was not specifically asked of the jury, "who was the aggressor," this determination had to be made to decide the case. The verdict makes it apparent to us that the jury found Tatman to be the aggressor. It is highly unlikely that the jury could have found that Cordingly was the aggressor and that he also acted in reasonable self-defense, especially considering the fact that Tatman was hospitalized after the incident and Cordingly was uninjured. The special verdict form was not erroneous.

There was sufficient evidence in the record to support the verdict reached by the jury. The instructions given by the court adequately represented the law of self-defense and its limits. The special verdict form allowed the jury to decide this case in accordance with the law.

We affirm.