WILLIAM LEWELLING, Plaintiff In Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

460 S.W.2d 847

(*Knoxville,* September Term, 1970.)

Opinion filed November 16, 1970.

FRANCIS W. HEADMAN, BOYD W. COX, and CECIL L. FORINASH, Knoxville, for plaintiff in error.

DAVID M. PACK, Attorney General and Reporter, ARNOLD PEEBLES, JR., Assistant Attorney General, Nashville, and RONALD A. WEBSTER, District Attorney General, Knoxville, for defendant in error.

Mr. Justice Creson delivered the opinion of the Court.

This cause comes before the Court on petition for certiorari heretofore granted. It has been briefed and argued in this Court.

In this opinion, the parties will be referred to in accordance with the status they occupied in the trial court; that is, William Lewelling, defendant, and State of Tennessee as the State.

William Lewelling was convicted for the slaying of his seventeen year old son, Tommy Lewelling, in the family residence. The weapon was a .32 caliber pistol. The record shows that prior to firing of the pistol, defendant Lewelling had suffered a severe shotgun wound to his left shoulder from blast of a 12-gauge shotgun, at close range, fired by the deceased son.

Upon conviction of guilt of second degree murder, Lewelling was given a sentence of ten to twelve years in the State penitentiary.

This record reveals that the relationship between Lewelling and his wife had not been entirely a tranquil one; however, all witnesses testified that the deceased and Lewelling were very close; that deceased was, in fact, Lewelling's favorite son. A day or so before the shooting occurred, Mrs. Lewelling had sued defendant for divorce.

She was uncertain on the day in question as to whether he had been served with process. Just what Lewelling's reaction might be to this obviously gave her some concern.

On the afternoon of September 9, 1967, Mrs. Lewelling came home from work at 4:00 P.M., at which time the defendant was at home. At about 7:00 P.M. that evening, Mrs. Lewelling left home to do some washing, and upon returning two hours later, the defendant was gone.

At about midnight another son, Ronnie, aged fifteen, returned home from work and laid down on the sofa in the living room to watch television. Mrs. Lewelling and the deceased had already retired. Defendant returned about twenty minutes later and was carrying a pistol. It also appears that he had been drinking. The defendant instructed Ronnie to turn off the television and turn on the radio, which Ronnie did. Defendant then went into the bedroom where his wife was asleep on a small cot and the deceased was asleep in the large bed. He remained in the bedroom about five minutes, talking to his wife and deceased. No argument at all ensued during that time. The son, Ronnie, heard the conversation going on but could not distinguish what was said. Defendant then came back into the living room and laid down on the sofa. Shortly thereafter, according to Mrs. Lewelling, he called for Tommy, the deceased, and told him to load his gun. At this point, Mrs. Lewelling left and went down the street to call the police. It was not revealed in the record whether or not Tommy did, in fact, load his father's gun. Later, she saw defendant leave in his car so she returned to the home.

It appears that defendant went to his daughter's and son-in-law's house looking for his wife. While there, he argued with his daughter and pointed his gun at his son-in-law. The son-in-law sort of laughed this off and told defendant to put up the gun, which defendant did.

It further appears that as soon as defendant left his house Ronnie and the deceased got dressed. The deceased obtained a 12-gauge shotgun and went to the front porch, together with shells for the gun. Ronnie and Mrs. Lewelling followed deceased to the porch, at which time the deceased said, "Here he comes". Mrs. Lewelling went into the house and out the back door to that of a neighbor. Ronnie also went into the house to the kitchen and the deceased went into the bedroom where he had been sleeping.

When the defendant entered, Ronnie heard someone say "Go ahead and shoot" but could not tell whether the statement was made by his brother or father. A few seconds later, he heard the shotgun fire; and three or four seconds later, five pistol shots were fired. First, there were three shots and, after a slight pause, two more shots. Ronnie then left the house and told his mother that defendant had shot Tommy. Mrs. Lewelling also testified that she heard a shotgun blast before she heard the pistol fired. At the police investigation of the killing, a single-shot shotgun was found laying in the middle of the floor, broken down. The deceased was found lying across a bed and defendant sitting in a chair on the front porch.

Defendant never made any statement about the shooting, nor did he testify at the trial.

The majority opinion of the Court of Criminal Appeals held that the jury was warranted in finding that the deceased fired on his father in self-defense. This clearly implies the defendant was the original aggressor. Following this line of reasoning, the majority then held that an original aggressor cannot rely on self-defense unless he shows he quit, or offered to quit the combat and retreated as far as he could in safety. It is thus apparent that the opinion of the majority of the Court of Criminal Appeals directed the idea of self-defense to the deceased, rather than to the defendant.

As Judge Oliver points out in a strong dissent in this case, self defense is one available to the defendant on trial; and not a rule of law pertinent to characterization of the conduct of the deceased. The dissenting opinion further points out, forcibly, that this record is barren of any evidence to show provocation or reason for the deceased's shotgun assault; that there had been no threats made toward either of the sons or Mrs. Lewelling. No angry words had passed between defendant and his deceased son, or between defendant and his wife on the night of the fatality. In fact, moments after defendant came home, he remarked to the deceased son that on the next day he wanted to work on the car he had bought for the deceased. The dissenting opinion concludes as follows:

"What, it may be asked, would any reasonable man do upon entering his own home and finding himself suddenly and unexpectedly confronted by effective gunfire from within, seriously wounding him? Would he stand idle and await the possibility of further offensive moves by his assailant, or would he return the fire in self-

defense if he had a gun? It is submitted that the answers to these questions are not only obvious but must be determinative in this case. From this record, there can be no question that the defendant acted in his own defense only when the necessity therefor began. *May v. State*, 220 Tenn. 541, 420 S.W.2d 647; 40 C.J.S., Homicide, sec. 115, p. 986.

In my opinion, this record fully sustains the defendant's insistence that he acted only in his necessary self-defense, and I would reverse the judgment of the trial court and dismiss this case."

Further, this record plainly reveals that the deceased, before the shooting began, had more than one shell in his possession.

Upon close study of this record we find no basis upon which it can be said that defendant provoked the son's assault upon him—he had done no more than return to his home. There is no scintilla of evidence to be found that defendant had his pistol drawn when he entered the house immediately before the shooting.

After full consideration of *Crowder v. State* (1881), 76 Tenn. 669, and other pertinent cases on the rule pertaining to self-defense and the qualifications thereof, we are firmly of opinion that the presentation of this defense has not been properly presented in the courts below.

In addition, we are convinced, as insisted by defendant Lewelling, that the evidence preponderates against the verdict of guilt of the crime of which defendant was convicted.

It follows, therefore, that the judgment of the Courts below are reversed and the case remanded to the Criminal Court of Knox County for further proceeding.

DYER, CHIEF JUSTICE, and CHATTIN and HUMPHREYS, JUSTICES, concur.

McCANLESS, JUSTICE, not participating.