RICHARD CROWDER v. THE STATE.

CRIMINAL LAW. *Self-defense.* The trial judge in his charge, after saying
to the jury, that "the son has the right to fight for the father and
the father for the son, under the rules that one has a right to fight
in his own defense," adds: "If the father is in fault in bringing on
the conflict, then the son cannot lawfully fight in his defense until the
father has declined to fight, or offered to decline it, and this is true if
both parties are in fault in bringing it on, and both fight willingly."
The charge would have been more strictly accurate if it had been
qualified to this effect: If the father was in fault by beginning the
combat, before the son could be excused in stabbing in defense of the
father, it should appear that the latter had abandoned or offered to
abandon, the combat, *provided the fierceness of his adversary permit,* or he
have time to do so.

FROM WHITE.

Appeal in error from the Circuit Court of White
county.    N. W. McCONNELL, J.

GARDENHIRE, SWAFFORD & MURRAY and JORDAN
STOKES & SON for Crowder.

ATTORNEY-GENERAL LEA for the State.

McFARLAND, J., delivered the opinion of the court.

The defendant, with his father John A. Crowder,
were jointly indicted for maliciously stabbing the pros-
ecutor, John W. Knowles.

John A. Crowder was first tried and acquitted.
Afterwards the defendant was tried and convicted, and
sentenced to two years' imprisonment in the peniten-

tiary. His motion for a new trial being refused, he has appealed.

The prosecutor and John A. Crowder owned and occupied adjoining farms, with a pass-way between, which the prosecutor claimed as a private way. Said John A. Crowder proposed to set out his fence so as to interfere with the road, and he and the defendant were engaged in this work when the difficulty occurred. Only the prosecutor, the defendant, John A. Crowder and one other person were present at the affray—the latter witness saw only part of it.

The prosecutor's testimony, in substance, is that hearing that the Crowders were setting out the fence, he went to them to see if he could not compromise the dispute. After meeting the parties and some controversy had between them, John A. Crowder said he was going to move his fence out. Prosecutor told him if he did he would throw it down. John A. Crowder then threatened to strike prosecutor with a large stick, and upon the prosecutor telling him to strike, he did strike, when prosecutor caught the stick and jerked it out of said Crowder's hand, and then struck him (Crowder) with his fist, either knocking him down or causing him to fall, when the defendant, who had been sitting near by with a knife in his hands, ran up and stabbed the prosecutor twice from behind. The prosecutor then attempted to get away, but a further conflict was kept up between himself on the one side and the Crowders on the other, in which the prosecutor received three other stabs from the defendant, part of which were very severe and dangerous.

Crowder *v.* The State.

John A. Crowder does not differ materially from the prosecutor as to the beginning of the combat. He admits that he struck at the prosecutor with the stick, that this was the first blow, when prosecutor caught the stick and jerked it from him and struck him either with the stick or his fist, knocking him to his knees, but he denies that the stabbing occurred at that time. He says that after this, and when he had abandoned the fight, the prosecutor armed himself with a stick and attacked first the defendant and then the witness, and after a serious combat the stabbing was done by defendant at a time when the prosecutor was getting the best of the fight, and when the witness himself was in great hazard from his assault. This is in brief the theory of his testimony, omitting the details. A number of witnesses shows that the prosecutor's general character is bad, and he is sustained by some. On the other hand, the other witness, Cashdollar, proves that he saw John A. Crowder strike the first blow with the stick, and the prosecutor jerk the stick from him and knocked him down, when the defendant ran up from behind him and stabbed prosecutor with a knife, but he does not profess to have seen the remainder of the combat, as he was passing along and did not stop.

This is an outline of the case, omitting details, and omitting a good deal of other testimony tending to weaken or sustain the respective theories.

Several exceptions are taken to the rulings of the court, the most important of which are:

1st. That the State was permitted to prove that

some months before the difficulty the defendant bought a large knife, saying that he was not allowed to carry a pistol, but saying nothing about the prosecutor or any anticipated difficulty with him. The testimony taken alone was certainly not very pertinent or material, but we do not think it absolutely incompetent, or at all events not calculated to prejudice the defendant.

2d. The State, by several witnesses, sustained the general character of the prosecutor. Two of the witnesses said his character was good for the last eight or ten years. The defendant then proffered to ask the witness as to his character previous to that time, but the court sustained the objection of the attorney-general to the question.

This was not reversible error; the question was the character of the prosecutor at the time he testified. If the witness knew his character previous to the time fixed by them, their answers in the form given were almost equivalent to saying that previous to that time it was at least not free from doubt, so that in effect the defendant had the benefit of his proffered question.

Several objections are taken to the charge of the presiding judge, the most serious of which are as follows: After saying to the jury that "the son has the right to fight for the father and the father for the son, under the rules that one has a right to fight in his own defense," he adds: "If the father is in the fault in bringing on the conflict, then the son cannot lawfully fight in his defense until the father has declined the fight or offered to decline it, and this is true if both parties are in fault in bringing it on

and both fight willingly." The same general proposition had already been stated by the judge in the paragraph immediately preceding, and in both instances without qualification.

A more accurate statement will be found in the case of the *State* v. *Hill*, 4 Dev. & B., 491, quoted in *Hull* v. *The State*, 6 Lea, 255, in substance to this effect: If a person bring on an affray by making the first attack, he cannot excuse himself as for a killing or stabbing in self-defense, unless he show that he has quitted or offered to quit the combat and retreated as far as he could in safety, *if the fierceness of his adversary permit.*

The general proposition that the party who makes the first attack, looses the right to rely upon the plea of self-defense, unless he can show that he had abandoned or offered to abandon the combat before the fatal blow or stab was given, will, in some cases at least, need some qualification. If, for instance, a person begin a combat with his fists upon one of equal strength, and the latter instantly meet and press his assailant with a deadly weapon so closely as to leave him no reasonable chance to escape or abandon the conflict, and the latter is then compelled to take his adversary's life to save his own, the plea of self-defense ought to be available. The proposition of the judge, therefore, would have been more strictly accurate if it had been qualified to this extent: If the father was in fault by beginning the combat, before the son could be excused for a stabbing in defense of the father, it should appear that the latter

had abandoned or offered to abandon the combat, *provided the fierceness of his adversary permit,*" or he have time to do so. Of course all this assumes that at the time the stab is given, the father is in danger of death or great bodily harm, or honestly believed to be so, upon reasonable grounds.

The question is, whether this error or inaccuracy in the charge upon the facts of this case . constitutes reversible error. I am inclined to think that it does not, but the majority of the court think otherwise, and are of opinion that we cannot undertake to say that the error was immaterial.

The judgment must, therefore, be reversed, and the cause remanded for a new trial.