THE STATE OF KANSAS, *Appellee,* V. WALTER MOUNKES,
*Appellant.*

'No. 18,269.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Homicide in Defense of Third Party.*
Whether one may defend another from death or great bodily
harm does not depend upon the reality or imminence of the
danger nor upon the belief, as to these facts, of the one sup-
posed to be in peril, but depends upon the facts as they
reasonably and actually appear to the defender.

2. JUSTIFIABLE HOMICIDE — *Common-law Rule.* By the pro-
visions of section 11 of the crimes act (Gen. Stat. 1909,
§ 2499) the common-law rule is ingrafted into the statute;
and upon a charge of murder or manslaughter the accused
must, on trial, be acquitted if the alleged homicide was com-
mitted under circumstances or in a case where, by the com-
mon law, such homicide was justifiable or excusable.

3. ——— *Same.* Under the common law one may, without in-
curring criminal liability, take life if necessary to prevent
the murder of, or other atrocious felony against, his brother.
Justification for an assault with intent to kill can not require
more than when death results.

Appeal from Lyon district court. Opinion filed
November 9, 1912. Reversed.

*W. L. Huggins, Henry E. Ganse,* and *Humbert
Riddle,* all of Emporia, for the appellant.

*John S. Dawson,* attorney-general, *S. N. Hawkes,*
assistant attorney-general, and *O. S. Samuel,* county
attorney, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellant, after a preliminary ex-
amination, was prosecuted on an information and con-
victed of the crime of assaulting with a deadly weapon
with intent to kill one Ernest Van Sickle.

The first claim of error is the excluding of the full
transcript of the evidence taken at the preliminary

13—88 KAN.

hearing. The evidence was not offered as an impeachment of the testimony given by any witness on the trial but, as said in the appellant's brief, for the purpose of proving a negative; that the testimony of all the witnesses had been "pointed up," strengthened, and materially added to between the time of the preliminary examination and the trial. If there is any material alteration or contradiction in the evidence of a witness as given at the preliminary hearing and his testimony at a subsequent trial, which tends to impeach the witness or in any way to weaken the credibility of the story told in court, the portion of the evidence given at the preliminary hearing, necessary for the jury to make the comparison, should generally be admitted, but we can hardly conceive a case where all the evidence, covering, it is said, fifty typewritten pages at this preliminary hearing, should be admitted. At any rate the transcript fails to show that there was any prejudice to the appellant in its exclusion.

An entertainment was in progress at a country schoolhouse in the county. Four young men, or boys, namely, Ernest Van Sickle, twenty-four years old, Wilbur Jones, seventeen years old, Leslie Jones, his brother, twenty-one years old, and Floyd Byrt, twenty-three years old, had arrived and had been in the schoolhouse. The appellant, Walter Mounkes, twenty-two years old, and his brother, Arthur Mounkes, aged sixteen, arrived as the four others came out of the schoolhouse at some interruption in the proceedings. As the four passed the Mounkes boys, who stood in the doorway outside, Walter Mounkes said to Wilbur Jones that he understood Leslie Jones wanted to see him. Walter Mounkes and Leslie Jones stepped aside and conversed in a friendly manner for a short time and returned. As they returned, Arthur Mounkes pointed his foot toward Wilbur Jones and applied a vile epithet to him, whereupon Wilbur Jones knocked Arthur Mounkes down, and as soon as he got up Arthur

started to run.   Wilbur Jones took after him, Leslie and the other boys following.   They ran a short distance to a wire fence which compelled Arthur to turn, and he made a circle back to the porch of the school-house.   There he was overtaken and thrown down.   Before and after being thrown down, he called to the appellant for help.

The appellant testified that his brother Arthur called for help and said, "They are killing me"; that he started to go to Arthur's aid and took a knife out of his pocket for the purpose of protecting and defending his brother; that he struck Van Sickle because Van Sickle obstructed his passage by picking up a rock and in a threatening attitude exclaimed, "Let's kill the —— ——" (using a vile epithet).   That to defend himself and to enable him to go to his brother's assistance, he struck Van Sickle with the knife.   It was shown that there was a serious, possibly dangerous, wound made in Van Sickle's back.

Several objections are made to the introduction of testimony, but as the case is to be tried again and the same questions are not likely to arise, we will not consider them in order.

The most serious objection is to the instructions, especially No. 23, which reads:

"Upon these matters the jury is instructed that epithets or vile names applied by one to another, however abusive, will not justify one party in making an assault upon another; but it is also the law that one who uses vile names toward another which is calculated to provoke an assault and which does provoke an assault on the part of another can not resort to the use of a deadly weapon on his assailant and escape the consequences under the plea of self-defense.   And so in this case, if the jury shall believe from the evidence that Arthur Mounkes by applying to the Jones boy a vile epithet provoked an assault upon himself by the Jones boy, then in the conflict between said Arthur Mounkes and said Jones boy said Arthur Mounkes would not have had the right to use a deadly weapon

upon the Jones boy during any of the time of the conflict between them under the evidence in this case, and the right of the defendant to defend his brother Arthur against the assault being made upon him by the Jones boy is measured by the same standard and must be judged by the same rule that applies to Arthur Mounkes, the brother."

This instruction entirely overlooks the undisputed testimony that after Arthur Mounkes applied the epithet to Wilbur Jones and Jones had knocked him down, Arthur Mounkes got up and ran. This constituted a withdrawal from the conflict by Arthur Mounkes, and in pursuing him and throwing him down thereafter Wilbur Jones became the aggressor and Arthur Mounkes thereafter had a right to defend himself and to use whatever means actually and reasonably appeared to him necessary to such defense. The instruction is correct as to the first clause of the first sentence thereof (*The State v. Buffington*, 71 Kan. 804, 810, 81 Pac. 465), but the qualifying clause is misleading.

It is a general principle that one has a right to defend himself against any unlawful assault and to do whatever is necessary to save himself from the apparent danger. There is, perhaps, one exception to this rule, to wit: where one applies to another abusive language or epithets with the purpose and intent of provoking the other to make an assault upon him that he may inflict greater injury upon the other and justify under the plea of self-defense. Of course, the blow with his fist by which the Jones boy knocked Arthur Mounkes down was unlawful, but it was no justification for an assault with a deadly weapon, nor is it so contended. The jury should have been instructed that they could take into consideration that act and all that followed, up to the time Walter Mounkes struck the blow with the knife, in determining whether or not Walter Mounkes actually and reasonably believed that his brother was in danger of

The State v. Mounkes.

death or great bodily injury and whether Van Sickle was acting in concert with the other boys in obstructing him from going to the relief of his brother.

Neither are the rights of the appellant to assist his brother to be tested by the actual danger to which Arthur was exposed.    It was nighttime, Walter was some distance from his brother, the other boys were between them, and if the appellant had reason to believe and did believe that three of the other boys were, in combination, assaulting his brother, and the fourth was intercepting him from going to his brother's aid, and that the brother was in danger of being killed or receiving great bodily harm, he had a right to do whatever actually and reasonably appeared to him necessary to enable him to reach and assist his brother; and this even though his brother were not actually in such danger, and his brother did not actually believe that he was in danger of being killed or of receiving great bodily harm.    The 26th instruction also ignores the undisputed evidence that Arthur Mounkes fled and withdrew from the conflict after he had applied the epithet to Wilbur Jones, and in this respect is erroneous.

The court in all the instructions in the case assumes that the appellant had the right to use a weapon or to do whatever seemed to him necessary to defend his brother only upon the same condition of facts as they appeared to his brother, but, as before said, the test is that he may act upon the facts as they actually and reasonably appeared to himself.

Under section 9 of the crimes act (Gen. Stat. 1909, § 2497) homicide is justifiable only under specific conditions therein set forth, among which is, "the lawful defense of such person, or of his or her husband or wife, parent, child, master, mistress, apprentice, or servant when there shall be a reasonable cause to apprehend a design to commit a felony, or to do some great personal injury, and there shall be immediate

danger of such design being accomplished." Section 11 of the act (Gen. Stat. 1909, § 2499) reads:

"Whenever it shall appear to any jury, upon the trial of any person indicted for murder or manslaughter, that the alleged homicide was committed under circumstances or in a case where, by any statute of [or] the common law, such homicide was justifiable or excusable, the jury shall return a general verdict of not guilty."

The justification of an assault with intent to kill must be determined by the same test as a justification or excuse for a homicide. The common-law rule of justifiable homicide is stated in 1 Bishop's New Criminal Law, § 877, where it is said:

"Ordinarily, if not always, one may do in another's defense whatever the other might in the circumstances do for himself. . . . The common case is where a father, son, brother, husband, servant or the like protects by the stronger arm the feebler. . . . A rule to which, if there are any exceptions, they are few."

(See, also, *Stanley, &c., v. Commonwealth,* 86 Ky. 440, 6 S. W. 155, 9 Am. St. Rep. 305; 25 A. & E. Encycl. of L. 274; 21 Cyc. 826; 1 Wharton's Criminal Law, 8th ed., § 479.)

Section 11, supra, ingrafts the common-law rule into the statute of this state. (*The State v. Murray,* 83 Kan. 148, 110 Pac. 103.) Under section 11, therefore, with the common-law rule incorporated, one is excusable, or at least can not be convicted, for a homicide committed in defending his brother under the same conditions that he would be justifiable in defending his wife or other persons named in section 9 of the crimes act.

The judgment is reversed and the case is remanded for a new trial.