MURPHY *v.* STATE.

(*Nashville,* December Term, 1948.)

Opinion filed July 9, 1949.

J. B. REAGAN, Jamestown, and HOLLIS A. NEAL, Jamestown, for plaintiff in error.

NAT TIPTON, Asst. Atty. Gen., for the State.

MR. JUSTICE PREWITT delivered the opinion of the Court.

Defendant, Joe Murphy, appeals from conviction of voluntary manslaughter for the homicide of Hubert Ray Cook and punishment of not less than two nor more than ten years in the State prison for the offense.

There is little conflict in the testimony. Deceased, Hubert Ray Cook, was a young man who weighed about 140 pounds. Defendant is a man about 45 years of age. Arthur D. Murphy, a son of defendant, was subject to epileptic fits, and from the record before us, it appears that he did about as he pleased with reference to the ordinary matters of life.

The homicide occurred on Saturday night, August 7, 1948, at a dance in a store building at Wilder. The proof shows that deceased had gone to the juke box to put in

some nickels which would cancel the records that were furnishing the music for this dance. Arthur D. Murphy testified that the proprietor of the store had asked him to look after the juke box; that deceased came up to the juke box and started canceling the records and when he told him not to do this, he and deceased got into an argument which led to the homicide. Defendant testified that deceased made a motion to strike him, but his testimony is not corroborated in this respect. The weight of the evidence is that as a result of this argument Arthur D. Murphy hit deceased and knocked him backwards over a stack of soft drink bottles. When deceased came up he had a soft drink bottle in his hand and struck Arthur D. Murphy between the eyes. This cut on the latter's head seems to have addled him, and the testimony is that deceased reached for another bottle, or had another bottle in his hand. About this time defendant, who testified that he had come to the dance to look after his son, pulled his pistol, which he admitted carrying, and shot deceased one time behind the right ear, from the effects of which he died shortly.

The law in this State is well settled that where one is the aggressor in a difficulty he may not plead self-defense without withdrawing from the conflict and notifying his adversary of such withdrawal, unless the assault on him is so fierce and deadly that no time to withdraw is presented. *Crowder* v. *State,* 76 Tenn. 669; *Smith* v. *State*, 105 Tenn. 305, 60 S. W. 145. When an intervenor puts himself in the same position of the person to be rescued, he acts at his own peril. *Johnson v. State*, 125 Tenn. 420, 143 S. W. 1134, Ann. Cas. 1913C, 261; *Presley* v. *State*, 161 Tenn. 310, 30 S. W. (2d) 231.

"The doctrine of freedom from fault in bringing on a difficulty as a condition precedent to a plea of self-defense applies with equal force to a case in which one person interferes in a difficulty between two others in behalf of, or to protect, one of them; and generally speaking a person who does this will not be allowed the benefit of the plea of self-defense, unless such plea would have been available to the person whose part he took in case he himself had done the killing, since the person interfering is affected by the principle that the party bringing on the difficulty cannot take advantage of his own wrong. If the person sought to be protected provoked or brought on the difficulty, he must have clearly manifested a desire and intention to retire from the conflict; and even then the person interfering would not be justifiable if he struck the fatal blow in pursuance of a previous design to assist his friend in the event of a personal difficulty. And where one person interferes in behalf of another who was the aggressor, and there is opportunity to retreat after the interference, and advantage is not taken of it, the person interfering can claim no greater right than the other, and neither of them can invoke the doctrine of self-defense. Thus, if a son fight in defense of his father, his act in doing so will receive the same construction as that of the father, and if the latter was the aggressor in bringing on the difficulty, and could not plead self-defense, the same rule applies to the son. And the son cannot rely upon his own freedom from fault in bringing on the difficulty, as a defense, where he knew the father had provoked the attack; both must have been without fault in bringing it on. Nor is a father justified in killing the adversary of his son, where the son had provoked and brought on the conflict in which he was placed in immi-

nent danger. And the plea of self-defense cannot be interposed by a father who kills an officer rightfully seeking to arrest his son, to prevent such arrest. Nor can one strike to relieve a brother from peril unless the brother was free from fault in bringing on the difficulty which placed him in peril. And if a person in whose defense a brother engaged was in fault, and had not retreated or attempted to retreat, the interference is not justifiable or excusable." Wharton on Homicide, 3d Ed., Section 332, pp. 534-535.

We are of opinion that the jury was justified in concluding that the son of defendant was the original aggressor in the trouble which took the life of deceased. The son would not have been entitled to rely on the right of self-defense until he had withdrawn from the difficulty and notified deceased of that fact, and not having done so, defendant was not justified in taking the life of deceased.

Complaint is made as to the admission in evidence of the cap of deceased, because it was bloody and was calculated to prejudice the jury. The exhibition of the cap was relevant as showing the point at which the fatal shot entered the back of deceased's head.

We find no preponderance of evidence against the verdict of the jury.

All assignments of error are overruled and the judgment is affirmed.

All concur.