Charles M. BORREGO, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 3503.

Supreme Court of Wyoming.

Feb. 1, 1967.

**394**

John J. Rooney, J. J. Hickey, Cheyenne, John F. Sullivan, Laramie, for appellant.

Dean W. Borthwick, Deputy Atty. Gen., Lawrence E. Johnson, Sp. Asst. Atty. Gen., Cheyenne, Norman V. Johnson, Deputy County and Pros. Atty., Laramie, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Charles M. Borrego, with two others, Nicholas Coca, Jr., and Paul Raymond Lujan, Jr., was charged with second-degree murder for the killing of 17-year-old Scott Lyle Nelson, was tried separately and convicted of manslaughter, and has appealed.

On August 16, 1965, the three defendants and deceased were at a crowded dance at the National Guard Armory in Laramie. The defendants were identified by various witnesses as having either hit or kicked deceased. Following the final altercation, Nelson walked or staggered a short distance and dropped to the floor, apparently unconscious. When an officer arrived at the scene, he found Nelson's arms and legs contracted, did not believe Nelson was breathing, and started mouth-to-mouth resuscitation, at which time Nelson went limp. There was contradictory evidence regarding a pulse thereafter. An ambulance had been summoned and Nelson was taken to the hospital and pronounced dead on arrival at 12:05 a. m. The doctor performing the autopsy testified that the cause of death was asphyxia due to the presence of vomitus in the airway, that no openings were found through which air could get into his lungs through the trachea and that a normal person can live approximately eight minutes without getting air into his lungs. This doctor also testified that he found no active disease processes present in the deceased; had found three bruises, one on the right cheek, another on the left chest, and the third on the side of the left hip; but was unable to say with medical certainty or beyond any reasonable doubt what caused the vomiting, although he indicated that among other causes would be trauma and emotional disturbance.

Five errors are urged by the defendant in this appeal:

1. The court erred in denying the motion for bill of particulars filed before trial of the case.

2. The jury was prejudiced by the innuendoes of the appellee in the examination of a witness and the court should have directed a mistrial.

3. The court erred in giving Instruction 10 [1] to the jury.

4. The court erred in denying motions for directed verdict of acquittal.

5. The State did not sustain its burden of proof, failing to prove the corpus delicti in that it fell short of proving, beyond a reasonable doubt, that the

[1]. "You are instructed that if you believe the deceased was assaulted by Coca, Borrego and Lujan, or any of them, in pursuance of a design or understanding between them to commit the crimes of Second Degree Murder or Manslaughter as hereinbefore defined, then each is responsible for the acts of the other in carrying out such design."

blow struck by appellant was the cause of death of deceased.

█ With regard to defendant's first point, his motion for bill of particulars, filed October 27, 1965, had alleged that defendant was entitled to be informed "as to whether he allegedly killed Scott Lyle Nelson by a blow, or whether he allegedly was an accomplice in said matter or whether he allegedly killed Scott Lyle Nelson by other means and what the theory of the State is as to cause of death," and he moved that the State be required to furnish a bill of particulars in said matter by setting forth in full the precise theory under which the State would prosecute the charge against him. Defendant in argument here cites State v. Wilson, 76 Wyo. 297, 301 P.2d 1056, and Neusbaum v. State, 156 Md. 149, 143 A. 872. We indicated in the Wilson case that although ordinarily the appellate court will not review or revise a trial court's refusal to grant a bill of particulars, such rule is tempered considerably under constitutional provisions which grant accused the right to be fully informed of the nature of his accusation. In the instant case, however, the prosecuting attorney on August 18, 1965, had filed an information against the defendants in the justice court and proceeded with a preliminary hearing, which resulted in the justice of the peace finding that a crime had been committed and that there was probable cause shown that each of the defendants should be bound over to the district court, where information was then filed on August 30. The affidavit of the prosecuting attorney, filed in justice court at the time of the hearings there, stated, "That on or about the night of August 16, 1965 at the National Guard Armory located in this county, the defendants did, while attending a dance in said armory, shove, strike with fists, and kick with their feet the person of the deceased, Scott Lyle Nelson, to such an extent and in such a severe manner as to cause him to regurgitate and fill his upper passages leading to the lungs and such matter then being inhaled into and clogging deceased's lung[s]

causing his death by asphyxiation." Under this state of the record and in light of § 6-14, W.S.1957, relating to accessories before the fact, defendant was sufficiently apprised to permit a defense on all aspects of the crime charged, and the trial court did not abuse its discretion in denying the motion.

█ As to defendant's second point, that the jury was prejudiced by the innuendoes of the State in the examination of a character witness and the court should have declared a mistrial, it is noted that an objection was made by defendant to the challenged testimony, it was stricken from the record, and the jury advised not to consider it. Accordingly, there would appear to have been no ground for a motion for mistrial, but in any event, since the record shows an absence of any allusion to a motion therefor, there appears to be no foundation for arguing this matter here.

█ The charged impropriety of Instruction 10, the denial of motions for directed verdict of acquittal, and the State's failure to sustain the burden of proof, will be considered together. It is defendant's position that Instruction 10 was misleading to the jury in that no evidence was adduced of any design or understanding between the three defendants. However, as stated in Coca v. State, Wyo., 423 P.2d 382, a "concert of action" does not necessitate actual words or written compact since it was well settled by Espy v. State, 54 Wyo. 291, 92 P.2d 549, 557, a situation where the assault of two defendants on a victim resulted in his death, that if two persons engaged in such an assault are aiding or abetting each other in what they do a previous understanding is not necessary to be shown in order to render each of them accountable for the other's acts.

Various witnesses established that at the time of the final altercation, Nelson was followed by Borrego, Lujan, and Coca, Coca behind Nelson, Lujan and Borrego in front of him (Borrego to his left front), that Coca struck Nelson, that Lujan hit

Nelson between the stomach area and chest, and that Nelson was also hit on the side of the mouth. (Borrego was overheard to say that evening that he had hit Nelson a couple of times and that he had hit Nelson in the mouth.) Previous to this altercation. Borrego, Lujan, and Coca, had been observed pushing Nelson—Borrego and Coca shoving him with their hands, and Lujan with his shoulders. Wilford Candelaria, a person not charged, testified that he had seen Borrego, Lujan, and Coca around Nelson while he was dancing, and that he came up and "spread" Coca and Lujan apart and kicked Nelson between the legs. Another witness testified that before the time Candelaria had kicked Nelson, he had observed both Borrego and Lujan kicking Nelson. About the time Candelaria kicked Nelson the attention of a patrolman, hired by the private party conducting the dance, was attracted to the group of boys around Nelson. As he started walking toward them, they disapperaed and mingled into the crowd. Upon seeing the officer, Nelson breathed a sigh of relief, and after the officer left started to walk away—the final altercation between the defendants and Nelson then occurring.

Borrego himself insisted that he had been about fifteen feet distant and had seen Coca and Lujan shoving Nelson, that when he was about five feet away Candelaria came up and kicked Nelson between the legs, that it had "seemed like" Nelson looked at him (Borrego) and "kind of" walked toward him a little and threw a couple of wild swings. Borrego said that since he thought Nelson was aiming at him he ducked, threw a punch, and hit Nelson. He testified that after this Nelson was hit in the side by Coca and in the chest by Lujan.

As has been noted, the doctor who conducted the autopsy was definite in his statement that death was the result of asphyxia caused by vomitus, but he could not say with medical certainty what caused the vomitus. Defendant maintains that he was guilty of only simple assault and battery, and he urges as applicable here the rule of law that "if from the nature, location, or source of the wound (or other agency asserted as the cause of death), and the actual course of events transpiring between the defendant's attack and the victim's subsequent death, the cause of death is not ascertainable to the ordinary lay intelligence, expert medical testimony is necessary to support a conviction of homicide," citing Annotation, 31 A.L.R.2d 693, 702–703. Although if the jury had accepted Borrego's statement of what transpired, they would have had to find him guilty only of assault and battery, there was sufficient evidence to uphold a finding that he aided and abetted Coca and Lujan in the assault which resulted in Nelson's death. As noted in Coca v. State, Wyo., 423 P.2d 382, it is well settled that the criminal agency in felonious homicides may be established by circumstantial evidence. There was sufficient evidence before the jury, which if believed, would justify a finding that the vomitus was caused by the blows from this defendant and those who were acting with him, from the fear and excitement occasioned by their activities, or from a combination of the two. Accordingly, the charge that the court erred in refusing to grant motions for directed verdict of acquittal is without merit. Under the evidence Instruction 10, substantially similar to the one given in the Espy case, was proper; and whether or not the unprovoked, repeated attacks of the assailants against Nelson, with the striking of blows with the fists and kicking, showed an intention to kill was a question of fact which the jury was entitled to consider, Coca v. State, supra; and under the circumstances disclosed by the evidence, it was not necessary that the State prove beyond a reasonable doubt that the blow or blows struck by appellant caused the death of the deceased.

Affirmed.