Steven Wayne DUCKETT, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–54.

Supreme Court of Wyoming.

Sept. 4, 1998.

Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Diane M. Lozano, Assistant Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program;

and Krista L. Noonan, Student Director, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

TAYLOR, Justice.

Convicted of aggravated assault for stabbing his opponent in an altercation, appellant claims the district court erred in refusing to instruct the jury on defense of others as a legal justification for his actions. Appellant contends the district court compounded that error by an improper instruction in response to the jury's inquiry, during deliberations, regarding the lengths to which one might go in defense of another. Finding appellant presented sufficient evidence to warrant an instruction on his theory of defense, we reverse and remand for a new trial.

## I. ISSUES

Appellant, Steven Wayne Duckett (Duckett), presents three issues for review:

*ISSUE I*

Whether the appellant was denied his constitutional rights to due process when the court refused Defense Instruction B regarding defense of others.

*ISSUE II*

Whether the trial court erred when it refused to instruct the jury that the State must prove beyond a reasonable doubt that the appellant did not act in self-defense as per Defense Instruction A.

*ISSUE III*

Whether the appellant was denied his right to a trial by jury as guaranteed by the United States and Wyoming Constitutions when the trial court effectively directed the verdict against the appellant by its response in Instruction 23.

The State of Wyoming, as appellee, phrases the issues as follows:

I.  Did the district court err in denying appellant's requested jury instruction on defense of others?

II.  Did the district court err in refusing appellant's proposed instruction in-

forming the jury that the State must prove beyond a reasonable doubt that appellant did not act in self-defense?

## II. FACTS

On June 12, 1996, at about 10:00 or 11:00 a.m., Duckett went to the home of Mary Carlson (Carlson) bearing his guitar and a 12–pack of beer. Duckett, Carlson, and her boyfriend, Mylo Hetler (Hetler), spent the day drinking while Duckett and Carlson played music together. At some point, Duckett and Carlson decided to tape the music on Carlson's daughter's karaoke machine. After a short break early in the evening, Duckett returned to Carlson's home with his wife. Carlson's neighbor, Sonny Zentner (Zentner), and another friend, Rodney Miears (Miears), joined them. All continued drinking, while Duckett and Carlson continued to "jam" in the garage.

As time went on, the comradery deteriorated in conjunction with the sobriety of the participants. Eventually, Carlson and Duckett argued about their respective talents, which culminated in Carlson's order that the Ducketts leave the premises. Duckett and his wife left, but moments later returned in order to retrieve the musical tape so that no one could steal Duckett's uncopyrighted original material.

It is undisputed that after Duckett and his wife returned to the garage, Carlson and Duckett's wife engaged in a physical altercation, while at the same time Hetler and Duckett struggled on the floor. It is also uncontested that during the fight between Duckett and Hetler, Duckett stabbed Hetler eight times. However, the testimony conflicts as to who initiated the battles, why, and the extent of the violence. Because the issue in this case is whether sufficient facts were presented to warrant a jury instruction on the defense of others, we recount the facts as advanced by Duckett at trial. *Oien v. State,* 797 P.2d 544, 549 (Wyo.1990).

Duckett testified that when his wife reached for the musical tape, Carlson pushed her away. Duckett then reached for the musical tape, but stopped when he heard his

---

* Chief Justice at time of expedited conference.

wife scream, "Help. She's killing me." Duckett turned, and saw Carlson on top of his wife, slamming her head against the concrete floor. When he moved to help her, Hetler jumped off the couch and tackled him. As he hit the floor, Duckett's glasses flew off; he could not clearly see what was happening but could hear his wife screaming. Hetler was on top of Duckett as they struggled. Duckett told Hetler to free him because Carlson was killing his wife and he needed to help her. Duckett asked Hetler to help him stop Carlson. As the two men fought, Duckett could hear his wife begging for help while he continued to hear her head hitting the floor. Finally, he told Hetler he "was going to have to hurt him[.]" Duckett pulled his knife and stabbed Hetler, but it only made Hetler angrier. Duckett continued to stab until he was able to push Hetler off of him. As Duckett tried to get to his wife, "[s]omebody grabbed [his] shirt from the back * * * and they swung [him] towards the garage door." He again moved toward his wife, and "somebody had the baseball bat * * * and chased [him] out the door."

Realizing there was nothing more he could do to reach his wife, Duckett fled the garage and "stumbled" down the street knocking on doors, looking for help. When he knocked on a motel office door, it roused the proprietors next door. Duckett told them to call 911 because his wife was assaulted and he had stabbed someone. The proprietors complied, and Duckett spoke briefly with the operator before returning to his wife. When he got back to the area, he saw his wife leaving Zentner's, the house next door to Carlson's. Duckett grabbed his wife, and then ran away.

Portions of Duckett's version were corroborated by other witnesses. Carlson testified that during the fight, Mrs. Duckett "scream[ed] like a banshee," and that she remembers Duckett saying, "She's killing my wife. She's killing my wife." Mrs. Duckett testified that Carlson jumped on her, pinned her arms down and beat her head against the concrete floor. She screamed Duckett's name four or five times, then blacked out. Mrs. Duckett also testified that as they ran from the scene, she remembers Duckett say-

ing, "I had to stab Mylo. They wouldn't let me help you." The proprietors of the motel and the officer who found Duckett and his wife running from the scene all stated that Duckett told them his wife had been assaulted, he was being held down and couldn't help his wife, so he stabbed his assailant. Duckett repeated this statement during questioning at the police station, adding that he warned Hetler to get off, but that Hetler "kept punching him * * *."

Duckett was charged with aggravated assault and tried before a jury on October 15, 1996. During the jury instruction conference, the district court refused Duckett's proposed instruction regarding "defense of others," and another instruction explaining that the prosecution must prove beyond a reasonable doubt that Duckett did not act in self-defense. At the close of evidence, the jury was instructed on the justification of self-defense. After the jury retired for deliberations, several notes were sent to the judge asking for further instruction, including questions regarding the right to use force to protect others. Over Duckett's objection, the district court further instructed the jury, "For the 'defense of others' to be a right and lawful defense, the Defendant must have used necessary force against the person perceived to be threatening someone else."

After a verdict of guilty was returned, Duckett moved for a new trial. The district court denied this motion, and Duckett timely filed an appeal to this court.

## III. STANDARD OF REVIEW

The district court is "given wide latitude in instructing the jury; and as long as the instructions correctly state the law and the entire charge to the jury adequately covers the issues, reversible error will not be found." *Baier v. State*, 891 P.2d 754, 756 (Wyo.1995). We look at all the instructions together to determine whether the charge to the jury properly expressed the law of the case. *Vigil v. State*, 859 P.2d 659, 663 (Wyo. 1993).

"The duty of the trial court is to present in the instructions to the jury the law applicable to the issues actually raised by the

evidence." *Baier,* 891 P.2d at 756; *Hatheway v. State,* 623 P.2d 741, 743 (Wyo.1981). A defendant has the right to have instructions on his theory of the case, or his defense presented to the jury, if the instructions sufficiently inform the jury of the theory of defense and if competent evidence exists which supports the law expressed in the instructions. *Amin v. State,* 811 P.2d 255, 261 (Wyo.1991) (*citing Thom v. State,* 792 P.2d 192, 195 (Wyo.1990)). We view the evidence in a light favorable to the accused and "the accused's testimony must be taken as entirely true" to determine if the evidence is competent. *Oien,* 797 P.2d at 549. Even if the court deems the evidence to be weak, or unworthy of belief, the instruction must be given if a jury could reasonably conclude the evidence supports the defendant's position. *Stagner v. State,* 842 P.2d 520, 523 (Wyo. 1992) (*quoting Goodman v. State,* 573 P.2d 400, 409 (Wyo.1977)). "The refusal to allow an instruction requested by the defendant when due process requires the defendant's instruction be given is reversible error per se." *Oien,* 797 P.2d at 549.

## IV. DISCUSSION

### A. INSTRUCTION ON DEFENSE OF OTHERS

Duckett contends the district court erred in denying the jury the opportunity to consider whether his actions were legally justified under the theory of defense of others.[1] In *Leeper v. State,* 589 P.2d 379, 383 (Wyo. 1979), we recognized this common law defense:

> One asserting the justification of defense of another steps into the position of the person defended. Defense of another takes its form and content from defense of self. The defender is not justified in using force unless he or she reasonably believes the person defended is in immediate danger of unlawful bodily harm, and that the force is reasonable and necessary to prevent that threat.

At trial, Duckett testified that he never believed *he* was in imminent danger, but stabbed Hetler because he believed his wife was in imminent danger and that Hetler would not allow him to go to her rescue. The district court, however, found that the right of "self-defense of others" was not applicable in this case because Duckett used force against his own assailant, not his wife's. The district court reasoned that "it stretches things to say that the Defendant may use deadly force on a fourth person in order to utilize the right of self-defense." Over Duckett's objection, the district court concluded that Duckett's only theory of justification must rest on self-defense rather than defense of others.

The district court affirmatively implemented this ruling in response to the jury's question: "Does a man have the right legally to use whatever force is necessary to protect any individuals other than himself?" Over Duckett's objection, the district court instructed the jury: "For the 'defense of others' to be a right and lawful defense, the Defendant must have used necessary force against the person perceived to be threatening someone else."

Thus, the specific issue in this case is whether the justification for inflicting harm on a person in "defense of others" applies to situations in which the person harmed did not actually threaten the person defended, but actively prevented the rescuer from reaching the assailant. Absent a statute defining the defense of others in Wyoming, we must rely on common law as expressed in judicial decisions. However, research provides no case law which directly decides this specific issue. We therefore turn to the general common law principles regarding justification for the use of force to determine the scope of the defense.

■ Defense of another is an extension of the principles of self-defense. *Leeper,* 589 P.2d at 383. The common law extends the right of self-defense to defend against any

---

1. Duckett's proposed defense Instruction B reads:

   The right of self-defense of others exists when a person who has reasonable grounds to believe, and actually does believe, that another person is threatened with an attack that justifies the use of force as is reasonably necessary under the circumstances to secure the other person from the attack.

number of assailants, who are acting together, when a defendant is in danger of serious bodily harm. *State v. Foley*, 128 W.Va. 166, 185, 35 S.E.2d 854, 863 (1945).

> [The right to defend another] has been held to be available even if the defendant's act of defense was not directed against the actual assailant, but was directed against a person who, under the particular circumstances, could reasonably be suspected at that time of being a criminal confederate of the direct assailant.

6 Am.Jur.2d, *Assault and Battery*, § 63 at 58 (1963) (*citing Gafford v. State*, 37 Ala.App. 377, 68 So.2d 858, 859–60 (1953)). *See also State v. Huth*, 334 N.W.2d 485, 488 (S.D. 1983) (upholding instruction stating the defendant "must have acted upon an honest and reasonable conviction of necessity and a good faith belief that the [person harmed] or someone acting in concert with the [person harmed] intended to kill or seriously injury his [family member].")

The State correctly notes that the cases addressing the use of force in situations other than the common three-person "assailant/victim/rescuer" scenario contain facts indicating the additional assailant was in some way also directly threatening the victim. *See Gafford*, 68 So.2d at 859–60; *State v. Howard*, 896 S.W.2d 471, 480 (Mo.App.1995); *Com. v. French*, 531 Pa. 42, 611 A.2d 175, 177 (1992); and *Foley*, 35 S.E.2d at 863. However, we see no reasoned distinction between the justification to use force against an individual approaching the fray and the use of force against one knowingly standing guard to prevent rescue. In either case, the assailant's purpose, and the danger to the victim, is furthered by the actions of the assailant's confederate, and the danger to the victim may be alleviated only by the use of force against those acting in concert with the actual assailant.

---

**2.** Model Penal Code § 3.05 reflects the codification adopted by many of the forty-one states which have statutory provisions regulating defense of others. Marco F. Bendinelli & James T. Edsall, *Defense of Others: Origins, Requirements, Limitations and Ramifications*, 5 Regent U.L.Rev. 153, 154 n. 11 (1995).

The State argues that the extension of a "defense of others" to a fourth person is implicitly rejected by the Model Penal Code.[2] Model Penal Code § 3.05 provides:

> Use of Force for the Protection of Other Persons.
>
> (1) Subject to the provisions of this Section and of Section 3.09, the use of force upon or toward the person of another is justifiable to protect a third person when:
>
> > (a) the actor would be justified under Section 3.04[3] in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect; and
> >
> > (b) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
> >
> > (c) the actor believes that his intervention is necessary for the protection of such other person.

The State contends that because Model Penal Code §§ 3.04 and 3.05 make no reference to the use of force against anyone other than the assailant, it implicitly limits the application of defense of others to the classic "three person" pattern.

The State bolsters this contention by pointing to Model Penal Code § 3.09(3), which states:

> When the actor is justified under Sections 3.03 to 3.08 in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those Sections is unavailable in a prosecution for such recklessness or negligence towards innocent persons.

Based on this section, the State argues that defense of others is not available against fourth persons such as Hetler.

We fail to see the limitation in Model Penal Code § 3.05 suggested by the State. Noth-

---

**3.** Model Penal Code § 3.04(1) states that "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion."

ing in that language refers to an assailant. Even if such language was implied, as one scholar has stated,

[t]here is no apparent reason why an "*aggressor*," for the purposes of the defense, should be limited to the person directly threatening harm to the defendant. * * * Admittedly, it may be more difficult for [defendant] to demonstrate that force against X—a more distant source of the aggression—is necessary * * *, but the threat posed by X should trigger a justification for some action.

2 Robinson, *Criminal Law Defenses,* § 131(b) at 73 (1984) (emphasis in original).

The distinguishing factor here is whether Hetler was an "*innocent person*" or whether he was acting in concert with Carlson, the aggressor, to cause harm to Duckett's wife. We therefore must determine whether sufficient facts were presented for the jury to reasonably conclude that Hetler was acting in concert with Carlson.

Our precedent equates acting "in concert" with the concept of aiding and abetting a criminal activity. In *Borrego v. State,* 423 P.2d 393 (Wyo.1967), we considered the extent to which the actions of three defendants in an assault, resulting in the death of the victim, constituted concerted action for the purpose of holding each responsible for the death. Addressing whether a previous agreement was required to show concerted action, we stated:

[A] "concert of action" does not necessitate actual words or written compact since it [is] well settled * * * that if two persons engaged in such an assault are aiding or abetting each other in what they do a previous understanding is not necessary * * * in order to render each of them accountable for the other's acts.

*Id.* at 395 (*quoting Coca v. State,* 423 P.2d 382, 386 (Wyo.1967)).

In *Haight v. State,* 654 P.2d 1232, 1238 (Wyo.1982), we reviewed the defendant's role as "lookout" while his co-defendants committed a rape. Finding no evidence that the defendant actually assaulted the victim, we said:

The evidence, however, was sufficient for the jury to infer that appellant knew what Wilson and Evans were doing, and acted as a lookout for them. The State must prove that the accessory had some knowledge of the principals' offenses. *Dressel v. People,* 178 Colo. 115, 495 P.2d 544 (1972). Knowledge that a crime is being committed, even when coupled with presence at the scene, is generally not enough to constitute aiding and abetting. To convict one of aiding and abetting the commission of a substantive offense, the prosecution must prove that the substantive offense was committed by someone and that the person charged as an aider and abettor *associated himself and participated in the accomplishment and success of the criminal venture.* * * * From the evidence presented by the State, the jury could have reasonably inferred that Haight turned the victim over to Wilson and Evans and that Haight acted as a lookout, and that he thereby associated himself and participated in the accomplishment and success of the criminal venture.

*Haight,* 654 P.2d at 1238 (emphasis added). We find the principles expressed in these decisions applicable when asserting the defense of others as justification for a defendant's actions. If a fourth person "associate[s] himself and participate[s] in the accomplishment and success" of the assault on the victim by the actual assailant, the unlawful acts being perpetrated on the victim by the assailant are imputed to the accessory. *Id.* Thus, the necessary and reasonable force to subdue the accessory is directly related to the imminent danger to the victim.

■ We therefore hold that a person raising the "defense of others" in justification for injury to a person other than the victim's actual assailant must show a reasonable belief that the person defended is in imminent danger of unlawful bodily harm, and a reasonable belief that another person is associated and participating with the actual assailant, and the force used against any aggressor is reasonable and necessary to prevent the harm.

■ Viewing the evidence in the light most favorable to Duckett, we find the evidence sufficient to warrant an instruction on the defense of others. Carlson initiated the fight when she grabbed Mrs. Duckett and threw her to the floor. Carlson was intoxicated, and was much larger than her victim. Hetler attacked Duckett to prevent Duckett from interfering with the assault on Mrs. Duckett. Duckett, and presumably Hetler, saw Carlson beating Mrs. Duckett's head against a concrete floor. Mrs. Duckett was screaming as Duckett and Hetler struggled, and both participants continued to hear Mrs. Duckett's head hitting the cement. Despite Duckett's frantic pleas for help in rescuing his wife, Hetler deliberately held Duckett back while Carlson continued her assault. It was only then that Duckett used his knife to break free. Even then, Duckett was again prevented from assisting his wife. Left with no other choice, he fled for help.

While these facts warrant the presentation of Duckett's theory for the jury's consideration, we do not say that the testimony contradicting Duckett's version was unreasonable. Nor do we say that if Duckett is believed, the amount of force was justified. However, whether Hetler was acting in concert with Carlson; whether Duckett reasonably believed his wife was in imminent danger; and whether the force used was reasonable and necessary to prevent the danger to Mrs. Duckett, are all determinations which are within the jury's province. The failure to give an instruction on defense of others [4] and the instruction limiting this defense solely to one who uses force on the actual assailant denied Duckett the opportunity to have his defense considered by the jury. We therefore reverse and remand this case to the district court.

### B. Instruction on Burden of Proof

Since Duckett's second claim of error is likely to arise on remand, we address it here.

Duckett claims the district court erred in refusing to instruct the jury that the State must prove beyond a reasonable doubt that Duckett did not act in self-defense. In support of this position, Duckett cites *Small v. State*, 689 P.2d 420 (Wyo.1984), *cert. denied*, 469 U.S. 1224, 105 S.Ct. 1215, 84 L.Ed.2d 356 (1985) and *Scheikofsky v. State*, 636 P.2d 1107 (Wyo.1981).

The district court refused the instruction, noting the decision of the United States Supreme Court in *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), where the United States Supreme Court found no violation of due process in an Ohio statute which placed the burden of proving self-defense on a defendant. The district court, failing to find "a clear holding of the Wyoming Supreme Court that prosecutors in our state must prove beyond a reasonable doubt that Defendants did not act in self-defense," reasoned that absence of self-defense is not a necessary element in a charge of aggravated assault, and therefore the instruction was not appropriate.[5]

The decision in *Martin* was based on a specific legislative enactment. In upholding the authority of a state to place the burden on the defendant to prove an affirmative defense by a preponderance of the evidence, the United States Supreme Court recognized "a majority of the States have now assumed the burden of disproving affirmative defenses," and only Ohio and South Carolina require the defendant to prove an affirmative defense. *Martin*, 480 U.S. at 232, 236, 107 S.Ct. 1098. As early as 1889, in *Trumble v. Territory*, 3 Wyo. 280, 21 P. 1081, 1083 (1889), we rejected the proposition that the defendant carries the burden of proving the charged conduct was justifiable or excusable. In *Scheikofsky*, following *Trumble*, we found the instructions as a whole were sufficient to place the burden of disproving self-defense

---

4. We do not approve of the instruction offered by the defense in this case without further instruction that if the defendant intentionally injures one other than the actual assailant of the person being defended, the person injured must be acting in concert with the assailant.

5. The district court instructed the jury as follows:

Instruction No. 17
If you believe that Steven Wayne Duckett acted in self defense of himself pursuant to these instructions, you must find Steven Wayne Duckett not guilty of the crime of aggravated assault.

beyond a reasonable doubt on the State, but stated "[t]he inclusion of the specific statement of the burden of proof would have been preferable * * *." *Scheikofsky*, 636 P.2d at 1112. In *Small*, 689 P.2d at 423, we clearly stated: "[W]hen self-defense is properly raised the jury should be specifically instructed that the state has the burden to prove absence of self-defense beyond a reasonable doubt."

■ The fact that this case involved a charge of aggravated assault rather than homicide, and defense of others rather than self-defense, does not change the burden of proof. The reason for instruction as to the burden of proof when self-defense is raised is equally applicable to the defense of others.[6] As an initial proposition, the burden is on the defendant charged with aggravated assault to establish a prima facie case on every element of his alleged legal justification. *See Amin*, 811 P.2d at 260–61; *Ramos v. State*, 806 P.2d 822, 826 (Wyo.1991); and *Leeper*, 589 P.2d at 383. However, once the defendant does so, the court must give instruction on the State's burden to negate this defense beyond a reasonable doubt. *See State v. Acosta*, 123 N.M. 273, 939 P.2d 1081, 1087, *cert. granted* 123 N.M. 215, 937 P.2d 76, *cert. quashed* 124 N.M. 312, 950 P.2d 285 (1997) (error in failure to instruct on state's burden of proof when selfdefense or defense of others properly raised; element of aggravated battery is "unlawfulness" of act).

## V. CONCLUSION

Defense of others as justification for the infliction of harm on another is applicable not only to an actual assailant, but also to those acting in concert with the assailant to the extent the defensive force used is necessary and reasonable. The defendant has the burden of showing the facts necessary for each element of his legal justification for his actions when charged with aggravated assault.

Once a prima facie case is demonstrated, the State must prove the absence of legal justification beyond a reasonable doubt. Here, the district court failed to instruct the jury on the defense submitted by Duckett. We, therefore, reverse and remand for a new trial.

LEHMAN, Justice, concurring.

I concur with the majority opinion of the court in this case, but feel compelled to comment on the dissenting opinion. The dissent asserts Duckett's wife could not claim a right of self-defense as to Hetler because Hetler "[n]ever, in any way threatened Duckett's wife with any serious bodily injury." Dissent, at 4. This analysis overlooks, or chooses to ignore, 2 ROBINSON, CRIMINAL LAW DEFENSES § 131(b) (1984), whether the full or truncated version. Relying on this section, the majority's position is that Hetler was, in effect, threatening Mrs. Duckett by restraining her husband from coming to her aid. In other words, when viewing the evidence in the light most favorable to Duckett, Hetler and Carlson were acting in concert. Just as X and Y are aggressors in the hypothetical, Carlson and Hetler were, due to their concerted actions, aggressors against Mrs. Duckett. She thus had a right to defend herself against both. If, as the dissent acknowledges, Duckett steps into the shoes of his wife in his claim of defense of others, then Duckett was entitled to repel either aggressor, Carlson or Hetler. Admittedly, the hypothetical posed by the Robinson treatise is more intriguing and would perhaps better adapt to a screenplay than the drunken melee that took place in Carlson's garage. However, it is hard to see how this sophistication makes any difference.

Also, the dissent's application of *Leeper v. State*, 589 P.2d 379 (Wyo.1979) is misguided, if not disingenuous. The dissent avows, "If the rule adopted by the majority here were

---

6. Wyo. Stat. § 6–2–502 (1997) provides, in relevant part:

   (a) A person is guilty of aggravated assault and battery if he:

   (i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

The State must show, beyond a reasonable doubt, that the circumstances under which the defendant acted manifested an extreme indifference to the value of human life. If the jury finds that a defendant truly acted in self-defense or defense of others, then the circumstances are not those required by statute.

the law, then Mrs. Leeper would have been justified in shooting and perhaps killing every person who might have attempted to interfere with her effort to dispatch Johannsen." Dissent, at 951. Two critical facts distinguish *Leeper* from the case at bar. First, Leeper's husband and Johannsen were mutual combatants. Since her husband could not assert self-defense, Mrs. Leeper could not invoke the defense of others. In the present case, viewing the facts in Duckett's favor, Mrs. Duckett and Carlson were not mutual combatants. Carlson was the aggressor. Mrs. Duckett would thus assert self-defense, which in turn permits her husband to invoke the defense of others.

Second, Johannsen was not using deadly force against Leeper's husband. For this reason, Mrs. Leeper was not justified in using deadly force against Johannsen or against anyone acting in concert with Johannsen. This is true even if Johannsen had been the aggressor. In this case, Carlson was slamming Mrs. Duckett's head into a concrete floor. Thus, it becomes a question for the jury whether the use of force by someone acting on Mrs. Duckett's behalf was reasonable and necessary. *Leeper*, 589 P.2d at 383. The majority's reliance on *Leeper* is sound.

Finally, the dissent insists that "[t]he defense of defense of others should be limited to those situations in which the person to be rescued is clearly entitled to a claim of self-defense." Dissent, at 951. This is precisely what the majority opinion endeavors to do. More important, the majority attempts to reach a workable resolution of a difficult problem. Justifications for battery or homicide should not be easily invoked. However, the majority opinion recognizes that, at times, a person is left no choice but to come to the aid of a loved one, or even a stranger, in need of assistance. We must trust that juries, as arbiters of the facts, will be able to determine when such actions are justified.

THOMAS, Justice, dissenting, with whom MACY, Justice, joins.

I dissent from the majority opinion in this case. I would hold that Duckett was not entitled to a defense of defense of others in this case, and consequently there was no error in the refusal of the district court to give the requested instruction. The Judgment and Sentence in this case should be affirmed. Succinctly, there is nothing in this record that persuades me that Duckett's wife would have been justified in using deadly force against Hetler, and if she would not have been justified in doing that, Duckett has no better claim to a defense of others theory than she had to a self defense theory.

In invoking the fulcrum of acting in concert, in this case the majority opinion manifests disingenuity. The full quotation from 2 ROBINSON, CRIMINAL LAW DEFENSES, § 131(b) at 73 (1984), is far less persuasive than the truncated version included in the proposed majority opinion. The full version reads:

**(b) Triggering Conditions**

The defensive force justification is triggered, as noted in subsection (1) of the principle, when an aggressor unjustifiably threatens harm to any legally-protected interest.

(1) **Aggressor.** An "aggressor," as that term is used in the triggering condition in subsection (1) of the principle, might well be defined as any person who *contributes* to the threat of harm to the defendant. There is no apparent reason why an *"aggressor,"* for the purposes of the defense, should be limited to the person directly threatening harm to the defendant. Suppose that $X$, an underworld gang leader, orders one of his underlings, $Y$, to kill $D$ while both $X$ and $Y$ are in $D$'s presence. Suppose further that only $X$ is vulnerable to $D$'s defensive force ($Y$ has a bulletproof vest) and that $Y$ will act only while $X$ is alive. Although $Y$ presents the more immediate danger, $X$ is as dangerous and as responsible for the threat as any other aggressor. Indeed, if $D$ kills $Y$ in self-defense, $X$ may order someone else to do the job, and the threat to $D$ will continue. $D$ should be able to claim self-defense, then, against $X$ as well as against $Y$. Admittedly, it may be more difficult for $D$ to demonstrate that force against $X$ a more distant source of the aggression is necessary, as described in subsection (c) of this

section, but the threat posed by *X* should trigger a justification for some action.

Clearly, the author was discussing self-defense, not defense of others, and the circumstances are much more sophisticated than the combat between Duckett's wife and Carlson.

The fulcrum for the majority position is unsound, and the lever of Wyoming authority is equally weak. The majority invokes *Leeper v. State*, 589 P.2d 379 (Wyo.1979), but simply for the proposition that Wyoming has recognized the defense of defense of others. A more ample reference to the language of *Leeper* demonstrates the limitations that are imposed upon that theory of defense.

**One asserting the justification of defense of another steps into the position of the person defended. Defense of another takes its form and content from defense of self.** The defender is not justified in using force unless he or she reasonably believes the person defended is in immediate danger of unlawful bodily harm, and that the force is reasonable and necessary to prevent that threat. The defender can only use that degree of force necessary to relieve the risk of harm. *Commonwealth v. Martin*, Mass., [369 Mass. 640] 341 N.E.2d 885 (1976); *State v. Adams*, 2 N.C.App. 282, 163 S.E.2d 1 (1968); *State v. Washington*, 185 Neb. 329, 175 N.W.2d 620 (1970); *State v. Hewitt*, 205 S.C. 207, 31 S.E.2d 257 (1944); *Stanley v. Commonwealth*, 86 Ky. 440, 6 S.W. 155 (1887); *State v. Mounkes*, 88 Kan. 193, 127 P. 637 (1912); *Pond v. People*, 8 Mich. 150 (1860); *State v. Cook*, 78 S.C. 253, 59 S.E. 862 (1907); *Brockwell v. State*, Ark., [260 Ark. 807] 545 S.W.2d 60 (1976); *State v. Alston*, 35 N.C.App. 691, 242 S.E.2d 523 (1978); *Morgan v. State*, Tex.Cr.R., 545 S.W.2d 811 (1977); *State v. Meyer*, 96 Wash. 257, 164 P. 926 (1917); *Commonwealth v. Russogulo*, 263 Pa. 93, 106 A. 180 (1919); 1 Wharton Criminal Law and Procedure, § 218, p. 480 (1957). The defense is of ancient origin, and of uniform application. 2 W. Blackstone, Commentaries *3–4. **This defense does not allow the defender to do more than the one defended.**

The rule allows defense from unlawful attacks, and under the traditional defense, a defender was not justified in coming to the defense of an aggressor or one who initiated the battle. As the rights of the defender are coterminous with the right of the defense of self, and as one who initiated a battle had no right to self-defense absent abandonment, withdrawal or retreat available or communicated, one who defends an aggressor does so at his or her peril. *Crowder v. State*, 76 Tenn. 669 (1881); *Wood v. State*, 128 Ala. 27, 29 So. 557 (1900); *State v. Turner*, 246 Mo. 598, 152 S.W. 313 (1912); *Stanley v. Commonwealth*, supra; *Murphy v. State*, 188 Tenn. 583, 221 S.W.2d 812 (1949); *State v. Cook*, supra; *Mack v. State*, Ala.Cr.App., 348 So.2d 524 (1977). **Where two engage unlawfully in a mutual fight, of whatever character, the law does not authorize anyone to take sides and aid one to overcome his adversary.** Perkins, Criminal Law, 2d Ed., 1969, Ch. 10, § 5, p. 1020; *Utterback v. Commonwealth*, 105 Ky. 723, 49 S.W. 479, 20 Ky.L.R. 1515, 88 Am.St. Rep. 328 (1899); *Adams v. State*, 48 Tex. Cr.R. 452, 93 S.W. 116 (1906); and citations above. Where both agree to fight, both are aggressors. Earl Leeper and Johannsen mutually agreed to settle their differences by combat. Both voluntarily left the bar. Which of the two initially gave the invitation appears to us immaterial in such a case. In addition, Judith was aware of the consensual nature of the fight, hence, we restrict our holding to this situation, and distinguish the cases involving the ignorant defender, such as *State v. Fair*, 45 N.J. 77, 211 A.2d 359 (1965). Judith made no effort to dissuade the combatants. After they left the barroom, she thought for two or three minutes without comment. Then she rose, removed the weapon from her purse while still at the bar and without knowledge of the battle, and walked out the door. She requested no help and did not call for assistance. She was calm and collected, gave her warning and fired.

Judith Leeper was not, under these facts, justified in using deadly force in defense of her husband as he would not

have been justified. Earl was a mutual combatant. A difficult situation might arise if the two had agreed to use nondeadly force, and Johannsen had escalated the battle to a mortal level, but the facts, as the jury was entitled to find them, do not support that conclusion. Earl was on the ground, face down, but Johannsen at the time of the fatal shot was not in attack. He was standing over him. Afterward, Earl arose immediately and with Judith's help attempted to revive Johannsen. All witnesses testified Earl appeared to have suffered no visible injury, no marks on his person, or torn clothing. The jury was entitled to believe Earl was not in great peril of death or great bodily harm, and deadly force was unjustified by him or on his behalf. As the killing was unjustified, and as all the evidence shows no heat of passion, the conviction on murder in the second degree appears valid. Indeed, Judith testified that she believed Earl dead. If she is to be believed, this fact, together with the other facts, would indicate a revengeful mind. Indeed, the absence of a passionate character under such circumstances could have been considered as evidence of malice. *People v. Curtis*, 52 Mich. 616, 18 N.W. 385 (1884).

*Leeper*, 589 P.2d at 383 (emphasis added).

If *Leeper* were to be followed in this instance, it is clear that Duckett's wife could not have claimed a right of self-defense as to Hetler. There is nothing to suggest that he ever, in any way threatened Duckett's wife with any serious bodily injury. If the rule adopted by the majority here were the law, then Mrs. Leeper would have been justified in shooting and perhaps killing every person who might have attempted to interfere with her effort to dispatch Johannsen. I submit that this is a dangerous doctrine to have available in any situation, but clearly it is dangerous in any situation in which excess indulgence leads to combat.

The result reached by the majority in this case is contrary to our Wyoming precedent. It is not supported by the treatise that is relied upon. The defense of defense of others should be limited to those situations in which the person to be rescued is clearly

entitled to a claim of self-defense. There is nothing in this record to suggest that Duckett's wife was in any danger from Hetler. Since Duckett, by his own testimony, eliminated any self-defense claim on his own behalf, the perceptive approach of the trial court should be sustained.

Duckett's Judgment and Sentence should be affirmed rather than reversed. That is the resolution that I support.